655 So.2d 717 (1995)
Sharlena BLACK, et al.
v.
GORMAN-RUPP, et al.
No. 94-CA-1494.
Court of Appeal of Louisiana, Fourth Circuit.
May 16, 1995.
*719 J. Nelson Mayer, III, Edmond J. Harris, Valteau, Harris, Koening & Mayer, New Orleans, for plaintiffs-appellants.
Thomas W. Lewis, Terry B. Deffes, Boggs, Loehn & Rodrigue, New Orleans, for defendant-appellee, the Gorman-Rupp Co.
Donald O. Collins, David R. Nicholson, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendant-appellee, Mayer-Hammant Equipment, Inc.
Before SCHOTT, C.J., and BARRY, LOBRANO, ARMSTRONG and MURRAY, JJ.
ARMSTRONG, Judge.
This is an appeal by the plaintiffs from summary judgments granted in favor of two of the defendants in a products liability, negligence and strict liability personal injury case. Plaintiffs' decedent, Ronnie Black, was killed in a construction worksite accident when a 2,000 pound pump fell on him. The plaintiffs are his widow and children. The two defendants in whose favor summary judgment was granted are the pump manufacturer and the pump lessor (which leased the pump to Mr. Black's employer). Because we believe that there are genuine issues of material fact as to the liability of both of those defendants, we reverse both of the summary judgments and remand for further proceedings.
Mr. Black's employer, T.L. James Construction Company, was the general contractor for a large canal improvement project for the Sewerage and Water Board in New Orleans. The work included substantial excavation. Water would accumulate in the excavations and had to be pumped out. At the accident site, a 2,000 pound pump was placed on a "ranger" in an excavated pit. The *720 "ranger" was a metal I-beam which was welded to sheet metal piles which were at the sides of the pit. The "ranger" was placed some distance above the bottom of the pit so that the pump would be clear of water accumulated in the bottom of the pit. The pump was 38.57 inches wide and so would not fit within the flanges of the I-beam because those flanges were 36 inches apart. Therefore, two boards, wooden 4 × 4's, were placed across the I-beam and the pump was placed on top of them. The pump was not secured to the sheet metal piles at the sides of the pit. In fact, none of the parties' briefs on appeal assert that the pump was secured in any way.
On the morning of the accident, Mr. Black was directed to monitor the pump. The other T.L. James employees went to another site. Several hours later, a foreman discovered that the pump had fallen into the bottom of the pit. Mr. Black's body was discovered under water with the pump on top of him.
The plaintiffs sued Gorman-Rupp company, which manufactured the pump, Mayer-Hammant Equipment, Inc., which leased the pump to T.L. James, and other defendants as well. Gorman-Rupp and Meyer-Hammant filed motions for summary judgment which the trial court granted.
We have emphasized that caution should be exercised in granting summary judgment. e.g., Koenig v. New Orleans Public Service, Inc., 619 So.2d 1127 (La.App. 4th Cir.1993). Summary judgment may not be used to circumvent trial on the merits. Id. Any doubt as to whether summary judgment should be granted should be resolved against granting summary judgment. Id. The Supreme Court has expressed much the same points with the following language:
In Louisiana, however, there is a strong preference for full trial on the merits in non-defamation cases. Because of the resulting heavy burden on the mover, a showing by the mover that the party with the ultimate burden of proof likely will not meet his burden at trial is an insufficient basis for summary judgment.... Summary judgments are to be sparingly granted.... Any doubt is to be resolved against granting the motion. (citations deleted)
Sassone v. Elder, 626 So.2d 345, 352 (La. 1993). Thus, the mover must show, not merely that the opposing party is unlikely to prevail at trial, but there are no "genuine issues as to material fact." La.Code Civ. Proc. art. 966.
The plaintiffs' claims against the pump manufacturer, Gorman-Rupp, are governed by the Louisiana Products Liability Act, La. R.S. 9:2800.51 et seq. ("LPLA"). The plaintiffs advance two failure-to-warn theories of liability of Gorman-Rupp. The LPLA provides for liability of a manufacturer if its product is unreasonably dangerous because of lack of an adequate warning. A. A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.
B. A manufacturer is not required to provide an adequate warning about his product when:
(1) The product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product's characteristics; or
(2) The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.
C. A manufacturer of a product who, after the product has left his control, acquires knowledge of a characteristic of the product that may cause damage and the danger of such characteristic, or who would have acquired such knowledge had he acted as a reasonably prudent manufacturer, is liable for damage caused by his subsequent failure to use reasonable care to provide an adequate warning of such *721 characteristic and its danger to users and handlers of the product.
La.R.S. 9:2800.57.
"Adequate warning" means a warning or instruction that would lead an ordinary reasonable user or handler of a product to contemplate the danger in using or handling the product and either to decline to use or handle the product or, if possible, to use or handle the product in such a matter as to avoid the damage for which the claim is made.
La.R.S. 9:2800.53(9).
The plaintiffs' first failure-to-warn theory as to the alleged liability of Gorman-Rupp is that the Installation, Operation and Maintenance manual and the Pump Safety Handbook that pertain to the model of pump in question do not give sufficiently specific instructions as to mounting the pump or warnings about failure to properly mount the pump. Obviously, the plaintiffs' theory is that, if the pump had been properly mounted, then it would not have fallen.
The Pump Safety Manual does state: "Secure the pump after it is in its operating position." Whether the manual says anything more specific about securing the pump, such as how or why to secure it, is not revealed by the affidavits below.
We believe that there is a genuine issue of fact as to whether the warning to "secure" the pump was adequate. The Supreme Court has stated:

Whether a particular warning was adequate is a question for the trier of fact.... The determination of whether a warning is adequate depends upon a balancing of considerations including, among other factors, the severity of the danger,... the likelihood that the warning will catch the attention of those who will forseeably use the product and convey the nature of the danger to them, ... the intensity and the form of the warning, ... and the cost of improving the strength or mode of the warning.
Bloxom v. Bloxom, 512 So.2d 839, 844 (La. 1987) (emphasis added, citations deleted). Berthelot v. Aetna Cas. & Sur. Co., 623 So.2d 14, 19 (La.App. 1st Cir.1993); Cannon v. Cavalier Corp., 572 So.2d 299, 306 (La. App.2d Cir.1990).
Without holding that the issue of adequacy of a warning never can be decided by summary judgment, we note the obvious difficulty in finding no genuine factual issue under the open-ended multi-factor balancing approach mandated by the Bloxom case.
Certainly, the number and variety of facts and factors that properly might be considered by the jury as to this issue make it more likely that a full development of the facts in a full trial on the merits is necessary (including opposing expert testimony). For example, in the present case, neither party points out any evidence as to whether the pump would vibrate, shake or be subjected to other forces during operation so as to increase the need for instructions or warnings as to some specific type of mounting or method of securing the pump. The effects of the operation of powerful machinery such as the pump in question are not obvious to laypersons, including courts, and those effects can affect the issue of the adequacy of a warning.
Gorman-Rupp argues, citing several pre-LPLA cases, that "the duty to warn does not include dangers which are obvious to the ordinary user of that product and of which he knows or should know." The general concept advanced by Gorman-Rupp is carried forward into the LPLA.
A manufacturer is not required to provide an adequate warning about his product when:
(1) The product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product's characteristics; or
(2) The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.
La.R.S. 9:2800.57 B. However, as we have discussed above, not much about this pump is obvious at the present stage of this case. Indeed, the affidavits are fairly brief and do not go into detail as to the source and nature *722 of the danger which requires the pump to be "secured" (in the language of the Pump Safety manual) or to be properly "mounted" (in the language of the plaintiffs). Indeed, even Gorman-Ruff's brief does not explain why the pump fell on Mr. Black much less how that danger was obvious. At present, the "obviousness" defense is subject to genuine issues of material fact.
Gorman-Rupp also argues, again citing pre-LPLA cases, that "a manufacturer is under no duty to warn a `sophisticated user' of those dangers which the user may be presumed to know through his familiarity with the product." Obviously, Gorman-Rupp assumes that either T.L. James or Mr. Black himself is a "sophisticated user" of the type of pump at issue. The LPLA does not explicitly address this "sophisticated user" concept, but instead speaks of "the ordinary user or handler of the product," La.R.S. 9:2800.57.B(1), and simply of the "user or handler of the product." La.R.S. 9:2800.57 B(2). At the present time, we need not decide either the issue of whether the "sophisticated user" defense is carried forward under the LPLA or the issue of whether it is the employer (T.L. James) or the employee (Mr. Black) who must be the sophisticated user, see generally, Davis v. Avondale Industries, Inc., 975 F.2d 169 (5th Cir.1992) (Louisiana law), because we believe that there are genuine issues of material fact as to the relevant "sophistication" of both T.L. James and Mr. Black.
It has not been established that the pump in question is of a type invariably used only by specialists or experts. As to T.L. James, all that has been established is that it is a construction company and that it previously had purchased two of the type of pump at issue. What T.L. James actually knew about the pump, and specifically what it knew about proper "mounting" or "securing" of the pump, has not been established. As to Mr. Black, it appears that he was a laborer, although even that has not really been established, and it certainly has not been established that he knew anything about the proper "mounting" or "securing" of the pump. There simply is not yet enough information to say that there are no genuine issues of material fact as to the "sophisticated user" defense.
Additionally, it is apparent that there is an issue of causation with regard to any inadequacy (if there is any) of the warning in the Pump Safety Manual or to the instructions in the Installation, Operation and Maintenance manual. This is because, when the lessor, Mayer-Hammant, delivered the pump to T.L. James, it did not deliver copies of either manual to T.L. James.
In Bloxom v. Bloxom, 512 So.2d 839 (La. 1987), the court held that the warning in the operator's manual of a car was inadequate but that, because the owner never read the manual, there was no causation of the injury by the inadequate warning. Bloxom did hold that, when there has been an inadequate warning, there is a rebuttable presumption that the user would have read and heeded an adequate warning. The proof that the owner had never read the manual rebutted the presumption in the Bloxom case.
In the present case, although Mayer-Hammant did not deliver copies of the manuals when it delivered the particular pump actually involved in the accident, it previously had delivered copies of those manuals to T.L. James when it had sold two pumps of the same model to T.L. James. It has not been established whether or not anyone at T.L. James read those manuals, whether or not anyone who read the manuals was involved with the use of the particular pump that fell on Mr. Black or whether or not information from the manuals was transmitted to anyone who was involved with the use of the particular pump that fell on Mr. Black. There are genuine issues of fact as to causation with regard to any inadequate warning (if there was one) in the manuals.
The plaintiffs' second failure-to-warn theory as to the alleged liability of Gorman-Rupp is that "there were inadequate warnings on the pump itself as to how it should be mounted." This issue is particularly important in the present case because the lessor of the pump did not deliver the manuals to T.L. James with the particular pump at issue.
The affidavits do not establish whether or not there were any warnings on the pump *723 itself. None of the parties' briefs expressly states whether or not there were any warnings on the pump itself. For purposes of the present appeal, in which we review summary judgments for the defendants, we will assume that there were no adequate warnings, or no warnings at all, on the pump itself. Cf. Sassone v. Elder, 626 So.2d 345, 352 (La. 1993) ("heavy burden on mover" for summary judgment, doubts to be resolved against granting the motion).
The LPLA does not state whether or not the warning must be placed on the product itself, as opposed to being placed in a manual. See La.R.S. 9:2800.53(9); 9:2800.57. Thus, we believe that the issue of where the warning is placed must be considered simply as one aspect of whether or not the warning is adequate. Cf. Bloxom v. Bloxom, 512 So.2d 839, 844 (La.1987) (adequacy determination considers multiple factors including "the likelihood that the warning will catch the attention of those who will forseeably use the product"). Thus, we believe that the issue of whether the warning must be placed on the product itself must be considered on a case-by-case, or at least product-by-product, basis. Consideration must be given to the nature and severity of the danger to be warned against, the likelihood that the product will be used by persons who have not read the manual, the practicality and effectiveness of placing the warning on the product itself and any other relevant factors. See generally Bloxom, supra (warning placed in car operator's manual rather than on sun visor of car); Broussard v. Continental Oil Co., 433 So.2d 354 (La.App. 3rd Cir.1983) (warning placed on drill referring user to power drill manual rather than on drill itself); Lockart v. Kobe Steel Ltd., 989 F.2d 864, 867-68 (5th Cir.1993) (warning placed in excavator manual rather than on excavator itself) (Louisiana law). The affidavits do not evaluate any factors as to whether or not the warning must be placed on the pump itself so it is readily apparent that, in light of the legal standard we have just discussed, there are genuine issues of fact as to whether the warning should have been on the pump itself.
As to Mayer-Hammant, it leased the pump to T.L. James, but was not the manufacturer of the pump, so the plaintiffs' claim against Mayer-Hammant are not governed by the LPLA. La.R.S. 9:2800.51 et seq. Instead, the plaintiffs' claims against Mayer-Hammant are based upon Louisiana Civil Code article 2315 negligence and Louisiana Civil Code article 2317 strict liability.
The plaintiffs' first claim against Mayer-Hammant is that Mayer-Hammant allegedly was negligent in failing to give T.L. James the Pump Safety Manual and the Installation, Operation and Maintenance Manual in connection with the delivery of the pump in question to T.L. James. In particular, the plaintiffs' claim, and the affidavit they filed as to Mayer-Hammant, focus on the failure to deliver the Pump Safety Manual because that manual instructed: "Secure the pump after it is in its operating position." Obviously, the plaintiffs' theory is that, had the safety manual been delivered, the pump would have been properly "secured" (or "mounted") and would not have fallen. The plaintiffs' claim is bolstered by the rebuttable presumption that, if an adequate warning had been delivered, it would have been read and heeded by T.L. James. Bloxom, supra. Of course, as one of their claims against Gorman-Rupp, the plaintiffs have alleged that the warning in the safety manual was not adequate, but that is a still unresolved issue of fact and the plaintiffs may proceed on alternative theories "even though the legal or factual based thereof may be inconsistent or mutually exclusive." La.Code Civ. Proc. art. 892.
Mayer-Hammant's response to this claim is that, on two occasions prior to the accident at issue, it had sold to T.L. James pumps of the same model as the pump at issue, and, in connection with those two sales, had delivered to T.L. James copies of the manuals at issue. The plaintiffs counter this by arguing that T.L. James is a large company with widespread operations and that it is not yet known whether anyone at the job site where the accident occurred had the manuals or had read them.
On balance, plaintiffs' point is well taken so that summary judgment should not have been granted. See Sassone v. Elder, supra *724 ("heavy burden" on mover, resolve doubts against granting summary judgment). Obviously, the safest practice for Mayer-Hammant would be to supply a copy of the manuals to the lessee each time it leased a pump. Of course, in some instances, that may not be necessary. If the T.L. James personnel at the job site where the accident occurred already had the manuals, or already were familiar with them, then the failure to deliver the manuals with the pump made no difference and would not be a cause of Mr. Black's death. All this, however, has not yet been established, so there are genuine issues of fact as to this claim of negligence.
The plaintiffs' second claim against Mayer-Hammant is based upon Louisiana Civil Code article 2317 strict liability for damages caused by an unreasonably dangerous thing in the "custody" ("garde") of the defendant. The plaintiffs' theory as to why the pump was unreasonably dangerous is that there were no adequate warnings on the pump itself. We have discussed that theory above, in connection with the plaintiffs' second claim against Gorman-Rupp, and we have concluded that there are genuine issues of material fact as to whether warnings should have been placed on the pump itself. That same conclusion is applicable to the issue of whether the pump was unreasonably dangerous under Louisiana Civil Code art. 2317 due to the lack of adequate warnings on the pump itself.
However, Mayer-Hammant argues that, even if the pump were unreasonably dangerous, Mayer-Hammant cannot be strictly liable under article 2317 because Mayer-Hammant did not have "custody" ("garde") of the pump at the time of the accident. Mayer-Hammant argues that, when it leased and delivered the pump to T.L. James, "custody" ("garde") was transferred from Mayer-Hammant to T.L. James. Our previous decision, Cardwell v. Jefferson Rentals Division, 379 So.2d 255 (La.App. 4th Cir.1979), is closely on point.
In Cardwell, the plaintiffs' employer had rented a chain hoist from the defendant. The employer kept the chain hoist overnight and, the next morning, as soon as it was used, the chain broke injuring the plaintiff. As the chain hoist was unreasonably dangerous, the issue was whether the defendant still had "custody" ("garde") of the chain hoist after it had rented and delivered the chain hoist to the plaintiffs' employer. We held that the defendant continued to have "custody" ("garde") of the chain hoist, even after renting and delivering it to the plaintiffs' employer, so the defendant was strictly liable under article 2317.
Perhaps, during further proceedings in the trial court, facts will be established which will distinguish the present case from Cardwell. However, upon the presently available information, Cardwell is controlling as to the issue of whether Mayer-Hammant has "custody" ("garde") of the pump after it was leased and delivered to T.L. James.
For the foregoing reasons, we reverse the summary judgments in favor of Gorman-Rupp and Mayer-Hammant and remand for further proceedings.
REVERSED AND REMANDED.
SCHOTT, C.J., concurs in the result.
BARRY, J., concurs.