682 So.2d 292 (1996)
Caroline JAEGER
v.
AUTOMOTIVE CASUALTY INSURANCE COMPANY, Ford Motor Company and Interstate Ford.
No. 95-CA-2448.
Court of Appeal of Louisiana, Fourth Circuit.
October 9, 1996.
*294 Matthew B. Collins, Jr., Dianne J. Marshall, New Orleans, for Carolyn Jaeger.
Michael T. Pulaski, Robert W. Maxwell, John P. Gonzalez, Pulaski, Gieger & Laborde, New Orleans, for Ford Motor Company.
Before SCHOTT, C.J., and CIACCIO, LOBRANO, PLOTKIN and JONES, JJ.
PLOTKIN, Judge.
This appeal arises from a crashworthiness claim brought by plaintiff Caroline Jaeger against an automobile manufacturer, Ford Motor Company. Jaeger alleged at trial that defects in design and construction or composition of the seat belt restraint system in her 1986 Ford Tempo, as well as an inadequate warning regarding operation of the seat belt, enhanced the injuries she received in a collision caused by another driver. Jaeger contended specifically that the defective seat belt restraint system failed to protect her in the accident from impact with the vehicle's interior components.
On January 31, 1990, Ms. Caroline Jaeger was injured when she collided in her 1986 Ford Tempo with a 1988 Toyota driven by Ms. Mamie Geraci. Ms. Jaeger was travelling north on West End Boulevard when Ms. Geraci, who was travelling east on Fillmore Avenue, failed to stop at the stop sign at the intersection of West End Boulevard and Fillmore Avenue. Ms. Jaeger settled her claim against Ms. Geraci and Ms. Geraci's insurer for $10,000, which was the full limit of Ms. Geraci's liability coverage.
Ms. Jaeger filed suit against her UM insurance carrier (Automotive Casualty Insurance Company), her automobile vendor (Interstate Ford), and the automobile manufacturer (Ford Motor Company), alleging under the Louisiana Products Liability Act that the seat belt was unreasonably dangerous (1) in construction or composition, (2) in design, and (3) because of an inadequate warning. During trial, Automotive Casualty Insurance Company settled for an undisclosed amount. Interstate Ford was dismissed by directed verdict. After trial, the jury found that the seat belt was unreasonably dangerous in design and contained an inadequate warning but rejected plaintiff's construction or composition theory, and awarded Ms. Jaeger a total of $904,000 in damages.
Ford Motor Company appeals contending (1) that the jury's findings on the issues of design defect and inadequate warning were clearly wrong, (2) that the jury was clearly wrong in assessing all fault for the accident to Ford Motor Company, and (3) that the damages are excessive. Ms. Jaeger appeals contending (1) that the jury's finding on the issue of construction or composition defect was clearly wrong, and (2) that the damages are inadequate.

I. The Accident
Ms. Jaeger testified that on January 31, 1990, she was driving her 1986 Ford Tempo on West End Boulevard toward Robert E. Lee when she collided with Ms. Mamie Geraci at the intersection of West End Boulevard and Fillmore Avenue. When Ms. Geraci failed to stop at the stop sign on Fillmore Avenue, Ms. Jaeger was unable to stop in time. Although she was wearing her seat belt, Ms. Jaeger was thrown forward and struck her chest on the steering wheel and her head on the A-pillar. As a result of the accident, the right front fender of Ms. *295 Geraci's Toyota and the front of Ms. Jaeger's Ford were pushed inward approximately five inches.
Dr. Robert Ehrlich was accepted by the court as plaintiff's expert in automotive engineering and accident reconstruction. Dr. Robert Ehrlich estimated that at the time of the accident Ms. Geraci was travelling at approximately eight miles per hour and Ms. Jaeger was travelling at approximately five miles per hour. He estimated the change in velocity at impact to be between seven and thirteen miles per hour.
Dr. Why King Liu was accepted by the court as plaintiff's expert in the field of biomedical/biomechanical engineering. Dr. Liu opined that Ms. Jaeger's injuries resulted from impact with the steering wheel and A-pillar when her seat belt failed to work properly. Dr. Liu examined Ms. Jaeger's car and found no witness marks to indicate where Ms. Jaeger struck the vehicle's interior. He found no load marks on the restraint system, no evidence that the steering column was stroked or that the steering wheel deformed, and no depressions in the padding, molding, or trim in the vicinity of the A-pillar. Dr. Liu explained that the lack of physical evidence of Ms. Jaeger's impact with the vehicle's interior was consistent with a low speed accident.
Dr. Jeffery Germaine was accepted by the court as defendant's expert in mechanical engineering and accident reconstruction. Based on his reconstruction of the accident, he opined that Ms. Jaeger's Ford Tempo was travelling at approximately nineteen miles per hour and Ms. Geraci's Toyota was travelling at approximately nine miles per hour before the accident, and estimated that Ms. Jaeger reduced her velocity by six miles per hour in a tenth of a second as a result of the accident. He testified that Ms. Jaeger could not have struck the steering wheel in the accident because he found no evidence of this impact in the steering column brackets, which were are typically bent when the steering column is stroked inward in an accident. Dr. Germaine also found no evidence of forcible contact with the knee bolster, A-pillar, window header, or windshield. Dr. Germaine found no evidence that a load was applied to Ms. Jaeger's seat belt.
Dr. Whitman Eldridge McConnell was accepted by the court as defendant's expert in biomechanics. Dr. McConnell testified that he found no evidence of forceful contact with the steering wheel in the form of distortion or stroking. There was no evidence of contact with the instrument panel or windshield. The trim and padding of the A-pillar were unaffected. There was no evidence of any forceful occupant contact anywhere in the car's interior.

II. The Seat Belt
In depositions before trial, Ms. Jaeger repeatedly stated that the seat belt was tight against her chest at the time of the accident. After plaintiff's counsel retained Mr. Walker as an expert, Ms. Jaeger said that she did not know whether the seat belt was tight at the time of the accident but that she assumed it was loose because Mr. Walker had showed her how her actions in reaching for the ashtray and radio could introduce slack into the belt. At trial, she could not say whether the seat belt was tight at the time of the accident but she reported that she always smokes and listens to the radio when she drives. Ms. Jaeger testified that she told the police officer who investigated the collision that she was wearing her seat belt in the accident. Officer Herman DeBois, however, indicated in his report that it was unknown whether Ms. Jaeger was wearing a seat belt.

A. Construction or composition defect
Dr. Ehrlich testified that he examined Ms. Jaeger's 1986 Ford Tempo for the plaintiff to determine whether the seat belt operated properly. He removed the seat belt from the B-post and tilted the mechanism at a forty-five degree angle, using gravity to simulate the force the mechanism would experience in a crash. The seat belt failed to lock consistently during this tilt test until Dr. Ehrlich shook the mechanism. It was Dr. Ehrlich's opinion, based on the tilt test, that Ms. Jaeger's seat belt was defective and would not have functioned properly in the crash. Dr. Ehrlich did not disassemble Ms. Jaeger's *296 seat belt retractor to determine why it did not work during the test.
Mr. Fred Hoffman was accepted by the court as the defendant's expert in automotive engineering and manufacturing. He testified that Ford's records showed that Ms. Jaeger's seat belt was individually certified as functioning as designed and as complying with federal motor vehicle safety standards when it left the factory. It was Mr. Hoffman's opinion, based on the spike brake test he performed, in which he drove the vehicle and pulsed the brake to recreate the deceleration the vehicle would experience in a low speed accident, that Ms. Jaeger's seat belt worked properly. Mr. Hoffman opined that the seat belt did not function for Dr. Ehrlich because he left too much webbing on the spool when he performed his tilt test.
In Dr. Germaine's opinion, based on the tilt test he performed, Ms. Jaeger's seat belt operated well within federal standards, and Ms. Jaeger's seat belt performed slightly better than an exemplar belt used for comparison.

B. Design defect
Dr. Ehrlich had no criticism of the seat belt design itself; he only stated that Ms. Jaeger's seat belt did not work consistently under the conditions of his tilt test. In fact, when he tested an identical Ford seat belt for comparison, he found that it worked consistently under the conditions of his test.
Mr. Ronald Walker was accepted by the court as the plaintiff's expert in accident reconstruction and safety engineering with expertise in seat belt analysis. Mr. Walker testified that a driver's inadvertent movements (such as reaching for the radio or ashtray) will normally introduce only two or three inches of slack into a seat belt like that in Ms. Jaeger's 1986 Ford Tempo. When Mr. Walker tested Ms. Jaeger in the car, he found that her inadvertent movements caused sufficient excess slack in her seat belt to permit her to strike the steering wheel and A-pillar in a collision as if she were unrestrained. Therefore, Mr. Walker speculated that Ms. Jaeger's seat belt did not comply with Ford's specifications and failed to restrain Ms. Jaeger in the accident.

C. Inadequate warning
Ms. Jaeger testified that she often had to tighten her seat belt because it would become loose when she reached for her ashtray or adjusted her radio. She was aware of the problem and took corrective action accordingly. Ms. Jaeger had not, however, read the warning regarding excess seat belt slack because she did not read her automobile owners manual.
Mr. Andrew LaCorg was accepted by the court as the plaintiff's expert in human factors. Mr. LaCorg testified that he examined Ms. Jaeger's 1986 Ford Tempo and the automobile owners manual. Ms. Jaeger told him that she customarily wore the seat belt snugly against her chest and that it was tight at the time of the accident. In Mr. LaCorg's opinion, the owners manual contained an adequate warning that there should only be one and a half inches of slack in the seat belt. Mr. LaCorg had no criticism of the warning in the manual itself. It was Mr. LaCorg's opinion, however, that this warning should also have been placed on the visor or seat belt itself. He was not aware of any similar seat belt warnings being placed on the belt or visor by any automobile manufacturer.

III. The Louisiana Products Liability Act
Ford's tension eliminator device in the seat belt retractor system introduces slack by design into the shoulder belt. Shoulder belt slack, which was intended to increase seat belt usage by making seat belts more comfortable, also reduces the effectiveness of the restraining system. Under the LPLA, the burden was on the plaintiff to establish that the seat belt tension eliminator was a defective product.
Ford Motor Company contends that the jury was clearly wrong in finding under the LPLA that the seat belt was an unreasonably dangerous product in design. Section 2800.56 of the LPLA provides:
A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:

*297 (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and
(2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.
Under this statute, a plaintiff claiming a product is unreasonably dangerous in design must establish that a feasible alternative design existed at the time the product left the manufacturer's control that would have prevented the plaintiff's injury and that the risk avoided by the alternative design outweighed the burden of its adoption. See, e.g., Morgan v. Gaylord Container Corp., 30 F.3d 586, 590 (5th Cir.1994). A product is not unreasonably dangerous in design where the evidence shows that the product can be safely used if the instructions in the operations manual are followed. Delphen v. DOTD, 94-1261, p. 8-9 (La.App. 4th Cir. 5/24/95), 657 So.2d 328, 334, writ denied, 95-2116, 95-2124 (La.11/17/95), 663 So.2d 716, 717.
Ford Motor Company also contends that the jury was clearly wrong in finding under the LPLA that the seat belt was an unreasonably dangerous product because of an inadequate warning. Section 2800.57 of the LPLA provides:
A. A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.
B. A manufacturer is not require to provide an adequate warning about his product when:
(1) The product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product's characteristics; or
(2) The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.
C. A manufacturer of a product who, after the product has left his control, acquires knowledge of a characteristic of the product that may cause damage and the danger of such characteristic, or who would have acquired such knowledge had he acted as a reasonably prudent manufacturer, is liable for damage caused by his subsequent failure to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.
In considering whether a warning in an instruction manual is inadequate because it should have been placed on the product itself, a court must consider the nature and severity of danger to be warned against, likelihood that the product will be used by persons who have not read the manual, practicality and effectiveness of placing the warning on the product itself, and any other relevant factors. See Black v. Gorman-Rupp, 94-1494, p. 7 (La.App. 4th Cir. 5/16/95), 655 So.2d 717, 723; see also Bloxom v. Bloxom, 512 So.2d 839, 844 (La.1987). A manufacturer's duty to warn does not include warnings concerning dangers that are or should be obvious to the ordinary user. See Delphen, supra, at p. 9, 334.
Ms. Jaeger contends that the jury was clearly wrong in finding under the LPLA that the seat belt was not unreasonably dangerous in construction or composition. Section 2800.55 of the LPLA provides:
A product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or *298 from otherwise identical products manufactured by the same manufacturer.
Inference of the existence of a vice or defect in a product is not allowed merely on the basis of the fact that an accident occurs. Clement v. Griffin, 634 So.2d 412, 429 (La. App. 4th Cir.), writ denied, 637 So.2d 478, 479 (La.1994).
Both parties appeal findings of the jury. It is well settled that a reviewing court may not set aside a jury's finding of fact unless it is clearly wrong, and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the reviewing court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). A reviewing court must do more than simply review the record for some evidence which supports or controverts the jury's findings; the reviewing court must review the record in its entirety to determine whether the jury's findings were clearly wrong or manifestly erroneous. Stobart v. State, through DOTD, 617 So.2d 880, 882 (La.1993). This Court is well aware of the appellate role in review reiterated by the Louisiana Supreme Court in Mistich v. Volkswagen of Germany, 95-0939 (La.1/29/96), 666 So.2d 1073, rehearing granted (4/26/96).
Unlike Mistich, in which the Louisiana Supreme Court found substantial evidence was introduced to support a trial judge's findings, a review of the record reveals that there was simply no evidence presented at trial from which the jury could infer that the seat belt of the 1986 Ford Tempo was unreasonably dangerous in design. Cf. Ashley v. General Motors Corp., 27,851 (La.App.2d Cir. 1/24/96), 666 So.2d 1320. Instead, much of plaintiff's experts' testimony was concerned with whether this particular seat belt operated properly during the accident. Dr. Liu concluded that Ms. Jaeger's seat belt failed to protect her in the crash without criticizing the design itself. Dr. Ehrlich found that Ms. Jaeger's seat belt failed to function properly in comparison to an identical Ford seat belt. Mr. Walker found that inadvertent movements caused excess slack in Ms. Jaeger's seat belt beyond what he expected from this particular design. Although this testimony might have afforded the jury a reasonable basis from which to conclude that Ms. Jaeger's seat belt was unreasonably dangerous in construction or composition, none of it sufficed to impugn the design itself. There is no conflict in the testimony regarding design; there is a complete lack of evidence to establish that the design is defective.
The assertion that European seat belts lack tension eliminators is insufficient to establish that a feasible alternative design existed at the time the product left the manufacturer's control that would have prevented the plaintiff's injury. Plaintiff's expert did not disassemble the seat belt to evaluate the mechanism or describe any defect in design. Plaintiff's expert conceded that the seat belt design met all government standards. Likewise, there was no evidence from which the jury could infer that the risk avoided by the alternative design outweighed the burden of its adoption. Moreover, it was uncontradicted at trial that the product could be used safely if used in accordance with the instructions in the manual. The mere statement that a seat belt tension eliminator device was not used in European vehicles is insufficient to prove the existence of a design defect under Louisiana law. Therefore, the jury was clearly wrong in finding the seat belt unreasonably dangerous in design.
A review of the record also reveals that there was no evidence presented at trial from which the jury could infer that the warning in the automobile instruction manual was inadequate. Plaintiff's expert conceded that the warning in the manual was sufficient as it was written. No evidence was offered to establish that the seat belt would not work as intended if the instructions in the owners manual were followed. Ms. Jaeger conceded that, although she had not read the manual, she was aware that it was necessary to eliminate excess tension from the seat belt and that she did so when necessary. Indeed, the risks of failing to properly wear a seat belt are commonly known. Plaintiff's expert's unsupported assertion that a warning should have been placed on the visor or on the seat *299 belt itself is insufficient under Black v. Gorman-Rupp, supra, to establish that the warning in the manual was inadequate. The jury was clearly wrong in finding the seat belt unreasonably dangerous because of an inadequate warning.
This Court can only reverse a lower court's factual findings when (1) the record reflects that a reasonable factual basis does not exist for the finding of the trial court and (2) the record establishes that the finding is clearly wrong. See, e.g., Baumeister v. Plunkett, 95-2270, p. 7 (La.5/21/96), 673 So.2d 994, 998. Because the record clearly shows that no factual basis exists for the jury's findings that the seat belt tension eliminator was unreasonably dangerous because of a design defect or an inadequate warning under the LPLA, and because the record establishes that these findings are clearly wrong, we reverse these factual findings. In contrast, the record shows conflicting factual evidence from which the jury could conclude that the seat belt tension eliminator was not unreasonably dangerous in construction or composition. Thus, applying the same standard, we must defer to the jury's factual finding on this latter issue.
The bulk of the experts who testified at trial had examined the vehicle, depositions, and medical reports. Ms. Jaeger's experts opined that this particular seat belt in Ms. Jaeger's 1986 Ford Tempo was defective and had failed to operate properly in the crash; Ford Motor Company's experts opined that the seat belt functioned properly in the accident. Thus, there was conflicting evidence from which the jury could conclude, after making reasonable determinations of credibility and inferences of fact, that the seat belt was not unreasonably dangerous in construction or composition. Although there was evidence that may have afforded the jury a reasonable basis for finding that Ms. Jaeger's seat belt was unreasonably dangerous in construction or composition, when viewing the record as a whole we cannot say that the jury was clearly wrong in finding to the contrary.
Accordingly, the judgment in favor of Ms. Jaeger is reversed. Each party will bear their own costs.
REVERSED.
JONES, Judge, dissents.
I find no error in the jury's conclusion that the seatbelts were defective in design. Their determination that the seatbelt was unreasonably dangerous in design was supported by the testimony given at trial.
On direct examination, plaintiff's expert, Ronald Walker, testified that the tension eliminator device was a defective design which caused slack to be introduced inadvertently by normal movements of a driver of the car which would result in the driver losing the protection of the seatbelt. Mr. Walker further testified that it is the window shade device which allows this slack to be introduced into the seatbelt, and that in his opinion, this is a defective design because a seatbelt is always better without any slack.
Mr. Walker further testified that the seatbelt tension eliminators were common in American made cars, but were never used in European Cars, or European Cars imported into the United States. This suggests that at the time of the accident there was an alternative design available to the manufacturer. Section 2800.56 of the Louisianan Products Liability Act provides:
A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:
(1) There existed an alternative design for the product that was capable of preventing claimant's damage; and
(2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers.
After hearing all of the testimony, the jury found that the plaintiff satisfied the burden of proof necessary to prevail under LPLA Section 2800.56. In reaching this conclusion, they chose to accept the opinion of Mr. Walker. *300 Having reviewed the testimony I find no error in the jury's conclusion. The jury was in the best position to evaluate the testimony of all the experts. For these reasons, I respectfully dissent.
Finally, we pretermit discussion of third party fault and damages in light of the majority's decree.