I,KIRBY, Judge.
Plaintiffs, Helen and Lewis Willis, appeal the trial court’s judgment granting summary judgment in favor of defendant Ford Motor Company and dismissing plaintiffs’ claims.
On August 29, 1989, Lewis Willis was injured when the Ford truck in which he was a passenger collided with a vehicle driven by David Medders. Plaintiffs filed suit against Medders, his employer, McDougall Company, and the manufacturer of the truck, Ford Motor Company. McDougall filed a third party demand against Gerald Wells, the driver of the truck in which Willis was riding, and Wells’ insurer, State Farm Mutual Automobile Insurance Company. Fidelity and Casualty Company of New York, the workers’ compensation insurer of Willis’ employer that paid benefits to Willis, intervened in this lawsuit.
All claims in this matter were settled, except for plaintiffs’ claim against Ford. Ford filed a motion for summary judgment on the issue of liability. The trial judge granted summary judgment in favor of Ford and dismissed plaintiffs’ claims against Ford.[1] Plaintiffs filed a motion for new trial, which was denied by the trial [¡judge. Plaintiffs now appeal, arguing that the trial judge erred in granting summary judgment in favor of Ford.
Summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. Art. 966. Article 966 was amended in 1996, but the burden of proof remains with the mover to show that no genuine issue of material fact exists. If, as here, the mover will not bear the burden of proof at trial, his burden on the motion does not require him to negate all essential elements of the plaintiffs claim, but rather to point out that there is an absence of factual support for one or more elements essential to the claim. La. C.C. art. 966 C(2); Fairbanks v. Tulane University, 98-1228 (La.App. 4 Cir. 3/31/99), 731 So.2d 983. After the mover has met its initial burden of proof, the burden shifts to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. La. C.C.P. art. 966 C(2); Smith v. General Motors Corp., 31-258 (La.App. 2. Cir. 12/9/98), 722 So.2d 348. If the non-moving party fails to meet this burden, there is no genuine issue of material fact and the mover is entitled to summary *1095 judgment. La. C.C.P. art. 966; Schwarz v. Administrators of Tulane Educational Fund, 97-0222 (La.App. 4 Cir. 9/10/97), 699 So.2d 895. Appellate courts review summary judgments de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate.
In their petition, plaintiffs allege that Ford is liable to them for having a faulty seatbelt in the truck in which Lewis Willis was riding. Plaintiffs allege that ] 3upon impact, the seatbelt released causing Lewis Willis to smash into the windshield, hitting his head with sufficient force to shatter the windshield.
Ford filed a motion for summary judgment alleging that plaintiffs cannot establish that the seatbelt restraint system was defective. Ford also alleges that plaintiffs are unable to establish causation absent a defined unreasonably dangerous condition and plaintiffs cannot prove a feasible alternative design.
In support of its motion, Ford filed a memorandum, a statement of uncontested material facts, the depositions of Gerald Wells and Lewis Willis, interrogatories and answers, requests for production of documents and answers, plaintiffs’ supplement and amendment to objections and answers to Ford’s interrogatories, the medical records of Lewis Willis, and the reports or records of physicians Richard B. Drude, John F. Schuhmacher and James R. Gosey. In opposition to Ford’s motion for summary judgment, plaintiffs filed a memorandum, a statement of contested issues of fact, an affidavit of engineer Donald K. Eisentraut and a research paper authored by Eisentraut, William H. Muzzy, III and Alan Cantor, entitled Assessment of Timely Retractor Lockup in Automotive Seat Belt Systems.
The theories of recovery against a manufacturer for defects in its product are listed in La. R.S. 9:2800.54 of the Louisiana Products Liability Act (LPLA). That statute states, in pertinent part:
A. The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.
B. A product is unreasonably dangerous if and only if:
[[Image here]]
(2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56.
La. R.S. 9:2800.56 provides:
A product is unreasonably dangerous in design if, at the time the product left its manufacturer’s control:
(1) There existed an alternative design for the product that was capable of preventing the claimant’s damage; and
(2) The likelihood that the product’s design would cause the claimant’s damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.
Under R.S. 9:2800.56, a plaintiff claiming that a product is unreasonably dangerous in design must establish that a feasible alternative design existed at the time the product left the manufacturer’s control that would have prevented the plaintiffs injury and that the risk avoided by the alternative design outweighed the burden of its adoption. Jaeger v. Automotive Casualty Insurance Company, 95-2448 (La.App. 4 Cir. 10/9/96), 682 So.2d 292, writ denied, 96-2715 (La.2/7/97), 688 So.2d 498. Even if a plaintiff shows that an alternative product exists that is capa *1096 ble of preventing the damage, plaintiff must also satisfy the “risk/utility” analysis, in which the utility of the product is weighed against the risk of harm. Bernard v. Ferrellgas, Inc., 96-621 (La.App. 3 Cir. 2/5/97), 689 So.2d 554.
| ^Before we reach the issue of whether plaintiffs presented sufficient evidence to defeat summary judgment, we must first determine whether Ford carried its burden of pointing out the absence of factual support for one or more elements essential to plaintiffs’ claim. We conclude that it has done so, thereby shifting the burden of proof to plaintiffs to produce' factual support sufficient to establish that they will be able to satisfy their evidentiary burden of proof at trial.
In arguing that summary judgment was inappropriately granted in this case, plaintiffs rely mainly on the affidavit of engineering expert Donald Eisentraut. In his affidavit, Eisentraut stated that he was familiar with the seat belt retractor mechanism in the type of Ford pickup truck in which Willis was riding. He explained that the seat belt retractor mechanism is the portion of the seat belt that stores excess webbing and locks the seat belt when an accident occurs. He said that this part of the seat belt assembly is the vehicle motion sensing Emergency Locking Retractor (ELR), and that the motion sensing ELR in the retractor mechanism causes the retractor to lock the belt storage reel in place during an accident. Based on his review of restraint system component designs, previous documents of the same or similar designs in other cases and testing of similar vehicle acceleration sensing ELR’s, Mr. Eisentraut’s opinion is that this ELR mechanism has the potential to fail to lock in a timely manner.
Mr. Eisentraut stated that the propensity of the single sensor ELR not to lock in a timely manner is called “skip lock,” which means the locking bar fails to engage the rotating teeth on the retractor belt storage reel. He further explained 1 fithat the locking bar skips over the teeth and fails to lock the webbing reel during vehicle deceleration. His preliminary opinion is that Lewis Willis was probably wearing his seat belt when the accident occurred and the upper torso restraint failed. He stated that Willis’ pattern of injury is consistent with seat belt use. He also stated that it is likely that the seat belt sensing ELR failed to lock, causing the retractor to skip lock. Eisentraut also stated his opinion that if Lewis Willis’ seatbelt had been working properly, his head should not have struck the interior structure in front of him, including the right front windshield area.
Eisentraut also stated in his affidavit that alternative designs that would have minimized or eliminated the chance of the retractor to lock in a timely manner were available at the time this truck was manufactured. One alternative design used two sensors with independent locking mechanisms. According to Eisentraut, foreign car manufacturers were using the dual sensor ELR mechanisms prior to the manufacture of the type of Ford pickup truck in which Willis was riding. His opinion is that if Ford had used this alternative design in this vehicle, it is more probable than not that the retractor for the seat belt that Lewis Willis was wearing would not have skip locked and the belt would not have spooled out.
Ford argues that in the Eisentraut affidavit, there are statements regarding a proposed alternative design, but there is no risk/utility analysis as required by R.S. 9:2800.56. Plaintiffs argue that we can infer from Eisentraut’s statement that dual sensors were being used in foreign cars in 1989 that these sensors worked and were economical; otherwise, foreign car manufacturers would not have used them.
|7Eisentraut’s stated that foreign car manufacturers were using the dual sensor ELR mechanisms prior to the manufacture of the 1989 Ford F250. However, Eisentraut did not say how long prior to the manufacture of the 1989 Ford truck *1097 that foreign cars were installing the dual sensors. Eisentraut’s affidavit would have been more persuasive if he had stated that this dual sensor technology was available sufficiently in advance of the manufacture of the Ford truck at issue that it would be reasonable to expect Ford to employ this technology in its design. He also did not say what brands of foreign cars employed the dual sensor. We cannot infer from Eisentraut’s statement regarding foreign cars that dual sensors were available in 1989 on relatively inexpensive foreign cars, in the same price range as the Ford truck at issue. Eisentraut did not say that nor can we infer that from his very vague and general statement. Furthermore, the other documents filed in opposition to. the motion for summary judgment also do not establish the availability and feasibility of an alternative design of the seat belt used in the 1989 Ford F250 truck.
Even assuming arguendo that plaintiffs can prove that the Ford seat belt was unreasonably dangerous in design, we find that plaintiffs did not offer sufficient factual support that a feasible alternative design existed at the time the Ford truck left the manufacturer’s control that would have prevented plaintiffs injury and that the risk avoided by the alternative design outweighed the burden of its adoption. Without such factual support, plaintiffs cannot carry their burden under La. R.S. 9:2800.56.
| ^Because plaintiffs did not offer factual support sufficient to establish that they could satisfy their evidentiary burden at trial, we find that the trial judge correctly granted Ford’s motion for summary judgment, dismissing plaintiffs’ claims against Ford.
For the reasons stated above, the trial court judgment is affirmed.
AFFIRMED.

. Although Ford's motion for summary judgment was on the issue óf liability only, the granting of this motion is a final judgment in that it dismissed the plaintiffs’ suit against the only remaining defendant. See, La. C.C.P. art. 1915.