853 So.2d 37 (2003)
Mary SEITHER, Individually and in Her Capacity as Tutrix of the Minors, Mark Seither and Stephen Seither
v.
WINNEBAGO INDUSTRIES, INC., Bernard J. Seither, AIU Insurance Company, and State Farm Mutual Automobile Insurance Company.
No. 2002-CA-2091.
Court of Appeal of Louisiana, Fourth Circuit.
July 2, 2003.
Rehearing Denied September 9, 2003.
*38 Santo A. Dileo, Harahan, LA, for Appellant, Norman Penton, d/b/a Penton Studio.
Arthur W. Landry, Plauche' Maselli Landry & Parkerson, L.L.P. New Orleans, LA, and George W. Healy, IV, George Healy & Associates Gulfport, MS, and Catherine Leary, Westwego, LA, for Plaintiff/Appellant.
Stephen M. Gele', Ungarino & Eckert, L.L.C., Metairie, LA, for AIU Insurance Company.
Robert W. Maxwell, Keith W. McDaniel, Geoffrey J. Orr, Lance Williams, McCranie, Sistrunk, Anzelmo, Hardy, Maxwell & McDaniel, Covington, LA, for Defendant/Appellant, Winnebago Industries, Inc.
(Court composed of Judge CHARLES R. JONES, JUDGE MICHAEL E. KIRBY, Judge DAVID S. GORBATY).
DAVID S. GORBATY, Judge.
FACTS AND PROCEDURAL HISTORY
In July 1999, Bernard and Bertha Seither invited their son Kurt and their three *39 young grandsons, Kurt Jr., age 13, Mark, age 11, and Stephen, age 8, to accompany them on a vacation trip to Gatlinburg. They were traveling in a 1994 Winnebago Brave Recreational Vehicle ("RV"). Bernard was driving the RV in rural Alabama when he drove off the road for several hundred feet, ultimately striking an oak tree bordering a fence line. Kurt Sr. and Kurt Jr. died as a result of injuries they sustained in the accident. Mark and Stephen were also injured in the collision.
The RV in question was manufactured by Winnebago Industries, Inc. ("Winnebago") in Forest City, Iowa. It was delivered to Reliable RV Sales, Inc. ("Reliable"), a Winnebago dealership located in Gulfport, Mississippi. Reliable sold the RV to Mr. and Mrs. Bobby Hill. The Hills reported problems steering the vehicle at highway speed. Service people selected by Reliable and Winnebago were unable to correct the problems to the Hills' satisfaction, so the Hills returned the vehicle as defective and obtained a full refund of the purchase price.
With Winnebago's consent, Reliable placed the vehicle back on the lot for resale as a used vehicle. Reliable then sold the vehicle to Bernard Seither. They furnished Mr. Seither with a certificate stating that the RV was in "excellent" condition.
Mary Seither filed suit, seeking damages as a result of the survival and alleged wrongful death of her husband, Kurt Seither, Sr., and her son, Kurt Seither, Jr. She also filed for damages as tutrix of her minor sons, Mark and Stephen, for their own personal injuries and the damages resulting from the deaths of Kurt Seither Sr. and Jr. Made defendants were Winnebago; Bernard Seither; his insurer, AIU Insurance Company ("AIU"); State Farm Mutual Automobile Insurance Company ("State Farm"), as the uninsured motorist carrier; and Reliable.
The matter went to trial beginning on October 10, 2001, before a jury in Orleans Parish. During the trial, Reliable settled with the plaintiffs. After the plaintiffs presented their evidence, Winnebago moved for a directed verdict, which was denied. The jury found Winnebago to be forty (40) percent at fault; Reliable to be thirty (30) percent at fault; and Bernard Seither and AIU to be thirty (30) percent at fault. They awarded actual damages totaling $1,182,000.00 and rejected plaintiffs' claims for punitive damages. Plaintiffs settled with Bernard Seither post-trial. All new trial motions were denied. All parties subsequently appealed.[1]
ASSIGNMENTS OF ERROR BY WINNEBAGO INDUSTRIES
1. The trial court abused its discretion in failing to grant a motion for directed verdict on the design defect claim because a valid alternative design had not been established under the Louisiana Products Liability Act ("LPLA"). Thereafter, the jury was clearly wrong in finding a design defect without the proof required by law.
A motion for directed verdict is a procedural device available in jury trials with the intended purpose of promoting judicial economy. Reed v. Columbia/HCA Information Systems, Inc., XXXX-XXXX (La.App. 5 Cir. 4/11/01), 786 So.2d 142. Courts have noted that it is appropriately utilized where the evidence overwhelmingly points to one conclusion. Hebert v. BellSouth Telecommunications, Inc., 01 0223 (La.App. 3 Cir. 6/6/01), 787 So.2d 614. The trial court has discretion in deciding whether to grant or deny the motion for *40 directed verdict. Brockman v. Salt Lake Farm Partnership, 33,938 (La.App. 2 Cir. 10/04/00), 768 So.2d 836. However, a motion for directed verdict should be granted when, after considering all evidentiary inferences in the light most favorable to the mover's opponent, it is clear that the facts and inferences are overwhelmingly in favor of the moving party, and reasonable men could not arrive at a contrary verdict. Burris v. Wal-Mart Stores, Inc., 94-921 (La.App. 1 Cir. 3/3/95), 652 So.2d 558. Only if there is substantial evidence "of such quality and weight that reasonable and fair-minded jurors in exercise of their impartial judgment might reach different conclusions" should a motion for directed verdict be properly denied. Cross v. Cutter Biological Div. Of Miles, Inc., 94-1477 (La.App. 4 Cir. 5/29/96), 676 So.2d 131. On appeal, the standard of review for directed verdicts is whether, viewing the evidence submitted, the appellate court concludes that reasonable people could not reach a contrary verdict. Lott v. Lebon, 96-1328 (La.App. 4 Cir. 1/15/97), 687 So.2d 612.
La. R.S. 9:2800.54 creates an exclusive remedy against manufacturers for damages "proximately caused by a characteristic of the product that renders the product unreasonably dangerous ..." Simon v. American Crescent Elevator Co., 99-2058, p. 3 (La.App. 4 Cir. 4/26/00), 767 So.2d 64, 68. A product can be unreasonably dangerous in design or because an adequate warning about the product has not been provided. La. R.S. 9:2800.54. The plaintiff bears the factual burden of proving each and every element. La. R.S. 9:2800.54(D).
Design defect claims are subject to Section 2800.56 of the Louisiana Products Liability Act ("LPLA"), which provides:
... a product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:
(1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and
(2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.
Under this statute, a plaintiff claiming a product is unreasonably dangerous in design must establish that a feasible alternative design existed at the time the product left the manufacturer's control that would have prevented the plaintiff's injury and that the risk avoided by the alternative design outweighed the burden of its adoption. See, e.g., Morgan v. Gaylord Container Corp., 30 F.3d 586, 590 (5th Cir. 1994). A product is not unreasonably dangerous in design where the evidence shows that the product can be safely used if the instructions in the operations manual are followed. Delphen v. DOTD, 94-1261, p. 8-9 (La.App. 4th Cir.5/24/95), 657 So.2d 328, 334, writ denied, 95-2116, 95-2124 (La.11/17/95), 663 So.2d 716, 717.
Plaintiffs' automotive design expert at trial was John Stilson. Mr. Stilson's thesis centered upon the complaint of the RV's crashworthiness. Mr. Stilson determined that the only appropriate alternative design was to "stretch the front end of this vehicle out." Initially, Mr. Stilson considered a minivan with unibody construction as a model or basis for his alternative design. After a crash test performed by Winnebago before trial established that the occupants of his minivan concept would *41 be killed in a collision with the allegedly defective Winnebago, Mr. Stilson proposed another alternative design: the Dodge Ram van.
At trial, he presented a mock-up of a Dodge Ram van. However, his design criteria were not outlined, there were no engineering drawings produced, he did not establish any dimensions, and he had done no analysis or testing. To further invalidate his theory, Mr. Stilson's analysis of the economic feasibility of his proposed alternative did not have a material quote or manufacturing labor factor. Mr. Stilson testified on cross-examination that he did not calculate or measure the amount of intrusion that would have occurred even with his supposed design, thus defeating a claim that the alternative design would have prevented plaintiffs' injuries. The record is devoid of any technical drawings, calculations, scientific study, photographs, or the publication of any engineering principles as to this proposed alternative design. Further, the National Highway Traffic Safety Administration ("NHTSA") tested the crashworthiness of the same model Dodge Ram van in a frontal barrier crash test. Stilson admitted on cross-examination that his proposed second alternative design had failed federal standards for crashworthiness and occupant protection.
At trial, Mr. Joseph Kuefler testified as Winnebago's expert in recreational vehicle engineering. He found that Mr. Stilson's design alternative added significant weight to the RV, and there was no chassis on the market that could support the weight. Thus, had Stilson actually reduced his speculative concepts to writing, the weight additions would have made its manufacture impossible.
We find that there was no valid alternative design presented. Mr. Stilson presented merely a concept that was untested, unengineered, and not presented to the jury in any fashion more than mere speculation. In fact, the Dodge van theory or concept represented by Mr. Stilson was shown to be invalid and incapable of passing required federal tests. Furthermore, plaintiffs failed to present a risk/utility analysis of the proposed alternative design. Since there was no valid evidence concerning one of plaintiffs' essential elements of the claim, a viable alternative design, we find that the trial judge abused his discretion in failing to grant the directed verdict as to this issue. This assignment of error has merit.
2. The trial court abused its discretion in failing to grant a motion for directed verdict on the warnings claim because no expert testimony or specific proposed alternative warning was presented. Thereafter, the jury was clearly wrong in finding a warnings defect without the proof required by law.
Section 2800.57 of the LPLA provides:
A. A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.
B. A manufacturer is not require to provide an adequate warning about his product when:
(1) The product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product's characteristics; or
(2) The user or handler of the product already knows or reasonably should be *42 expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.
C. A manufacturer of a product who, after the product has left his control, acquires knowledge of a characteristic of the product that may cause damage and the danger of such characteristic, or who would have acquired such knowledge had he acted as a reasonably prudent manufacturer, is liable for damage caused by his subsequent failure to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.
In considering whether a warning in an instruction manual is inadequate because it should have been placed on the product itself, a court must consider the nature and severity of danger to be warned against, likelihood that the product will be used by persons who have not read the manual, practicality and effectiveness of placing the warning on the product itself, and any other relevant factors. See Black v. Gorman-Rupp, 94-1494, p. 7 (La.App. 4th Cir.5/16/95), 655 So.2d 717, 723; see also Bloxom v. Bloxom, 512 So.2d 839, 844 (La.1987). A manufacturer's duty to warn does not include warnings concerning dangers that are or should be obvious to the ordinary user. See Delphen, supra, at p. 9, 334. A plaintiff must present evidence of an adequate warning which if provided "would lead an ordinary reasonable user or handler of a product to contemplate the danger in using or handling the product in such a manner as to avoid the danger for which the claim was made." La. R.S. 9:2800.53(9).
At trial, plaintiffs presented no evidence on any of the components of an inadequate warning claim. Plaintiffs did not present expert testimony concerning warnings, nor did they present any language of a proposed adequate warning. Indeed, the only possible warning could have been not to crash the vehicle into a tree. Because plaintiff failed to present any evidence on a warning claim, the trial judge abused his discretion in failing to render the directed verdict. This assignment of error has merit.
Because we find that Winnebago's first two assignments of error have merit, their remaining assignments of error are moot, and we need not consider them.
ASSIGNMENTS OF ERROR BY MARY SEITHER
1. The damage award of $250,000 to Mark Seither was so low as to constitute an abuse of the factfinder's wide discretion.
Since we have reversed the finding of liability as to Winnebago, and the remaining parties cast in judgment have already settled with plaintiffs, we need not consider this assignment of error.
2. The plaintiff is entitled to a new trial on the issue of punitive damages, as a remedy for Winnebago's improper concealment of the Calspan crash tests.
Through the application of Alabama law, the issue of punitive damages was presented to the jury. The jury rejected punitive damages. Without citing to any violated foundational rulings, appellees now suggest that this court should essentially impose sanctions on appellants by ordering a new trial on the issue of punitive damages "to ensure that Winnebago does not profit from [their] misconduct." There is no legal support for appellees' contention. This assignment of error is without merit.
3. Winnebago should be held responsible for the fault of Reliable. The evidence proved that every defect in the unit reported to Reliable was also reported to Winnebago. Winnebago was in a superior position to correct all defects in the unit, but instead approved of and ratified Reliable's *43 resale of the unit to Mr. Seither, under the representation that the vehicle was in excellent condition. Thus, The fault assigned to Reliable, 30%, should flow through to Winnebago.
Plaintiffs cite no law in support of their argument. We find no reason in law or equity to hold Winnebago responsible for Reliable's liability. We also note that plaintiffs settled with Reliable during trial and have thus already received compensation from them. This assignment of error is without merit.
4. The trial court erred in refusing to admit the 1976 Winnebago rollover test.
The trial court's ruling on the relevancy of the evidence and whether the probative value of the evidence is substantially outweighed by its prejudicial effect will not be disturbed on review, absent an abuse of discretion. Lacy v. ABC Insurance Co., 97-1182 (La.App. 4 Cir. 4/1/98), 712 So.2d 189. For evidence of prior, similar accidents to be probative, the person presenting such evidence must demonstrate that the accidents were substantially similar to the occurrence in question. Bailey v. Oliver, 504 So.2d 152.
The test at issue depicted a dissimilar experimental Winnebago motor home being induced to roll over upon being sent up a ramp when turning left. The present case involves the impact of a Winnebago into a tree. We find no abuse of discretion in the trial court's exclusion of this test, given the lack of similarity to the facts and circumstances of this case.
ASSIGNMENTS OF ERROR BY AIU INSURANCE COMPANY
1. The trial court erred in not applying Alabama law to the issue of liability of Bernard Seither and in not dismissing AIU.
On February 10, 2000, AIU filed a Motion for Partial Judgment and/or Declaratory Judgment praying that Alabama law, including the Alabama guest statute, be applied. The motion was denied, and AIU took a supervisory writ to this court. On July 18, 2001, this court granted the writ, but denied any relief, stating, "The trial court correctly determined that Louisiana law should apply to the issues of liability [and] affirmative defenses." AIU filed a supervisory writ with the Louisiana Supreme Court. On July 27, 2001, the Louisiana Supreme Court denied the writ.
We find no reason to reverse the earlier judgment of this court. This assignment of error lacks merit. Because we find that Winnebago's assignments of error have merit, AIU's remaining assignments of error are moot, and we need not consider them.
ASSIGNMENT OF ERROR BY NORMAN PENTON
1. The trial court erred in denying Penton's Motion for La.C.C.P. art. 863 Sanctions against Mary Seither's attorney, George Healy.
La. C.C.P. art. 863 pertains to the Signing of Pleadings. It provides, in pertinent part:
B ..... [T]he signature of an attorney or party shall constitute a certification by him that he has read the pleading; that to the best of his knowledge, information and belief formed after reasonable inquiry it is well-grounded in fact; that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
Appellant was hired by Healy to photograph and enlarge court exhibits. Penton asserts that Healy filed a Motion to Determine Photographic Costs to "harass and to bludgeon" Penton into compromising his outstanding account for photographic services. The record is devoid of any evidence *44 that would support appellant's claim. This assignment of error is meritless.
CONCLUSION
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
JONES, J., concurs with reasons.
JONES, J., concurs with reasons.
I reluctantly concur with the majority. The Louisiana Products Liability Act is specific that there must be a demonstration of the existence of "an alternative design for the product that was capable of preventing the claimant's damage ..." La. R.S. 9:2800.56(1). It appears from the record that the Seither's failed to present expert testimony regarding an alternative design. There is no question that the passenger compartment of the Winnebago should not have collapsed the way that it did. However, I am bound by law to rule in this manner.
NOTES
[1] Bernard Seither's insurer, AIU, has settled with plaintiff but has maintained the appeal because of a continuing dispute with Winnebago over allocation of damages.