882 So.2d 15 (2004)
Vana ANDREWS
v.
Margaret DUFOUR, The Government Employees Insurance Company and Ford Motor Company.
Vana Andrews
v.
Margaret Dufour, The Government Employees Insurance Company and Ford Motor Company.
Nos. 2003-CA-0736, 2003-CA-1848.
Court of Appeal of Louisiana, Fourth Circuit.
June 2, 2004.
Order Granting Rehearing in Part and Denying Rehearing in Part July 15, 2004.
*18 Darleen M. Jacobs, Al Ambrose Sarrat, Jacobs & Sarrat, New Orleans, LA, for Plaintiff/Appellant.
Terrill W. Boykin, Kriste L. Talton, Rodney, Bordenave, Boykin & Ehret, New Orleans, LA, for Defendant/Appellant, Ford Motor Company.
Martin E. Golden, Kantrow, Spaht, Weaver & Blitzer, Baton Rouge, LA, for Intervenor/ Appellee, United Healthcare Corporation.
(Court composed of Judge MAX N. TOBIAS JR., Judge LEON A. CANNIZZARO JR., and MOON LANDRIEU, Judge Pro Tempore).
MOON LANDRIEU, Judge Pro Tempore.
In this action involving an automobile accident, the plaintiff, Vana Andrews, and one of the defendants, Ford Motor Company ("Ford"), appeal a judgment notwithstanding the verdict ("JNOV"). The intervenor, United Healthcare Corporation ("United Healthcare"), answered the appeal. We reverse in part, affirm in part, and amend.

Facts
On the night of September 9, 1991 at approximately 8:15 p.m., Margaret Dufour was driving her 1985 Oldsmobile Cutlass in the far left lane of the three-lane Interstate 10 westbound in New Orleans. She testified that she was traveling at approximately 55 miles per hour when she suddenly observed a car stopped in the center of the lane in which she was traveling with *19 no lights on. She immediately applied her brakes but hit the rear of the car, a 1976 two-door Ford Granada, occupied by plaintiff, Vana Andrews, and Haywood Acker.
Although their names were not mentioned in the police report, two witnesses, John Griffin and Emily Griffin, testified that they observed the accident. Mr. Griffin was driving in the far right westbound lane about four or five car lengths behind Ms. Dufour. Mr. Griffin estimated that he was driving 72-75 miles per hour and that Ms. Dufour was moving at about the same speed. He suddenly noticed a vehicle stopped with no lights in the far left lane of the roadway about halfway up the slope of an overpass. He saw the brake lights of Ms. Dufour's vehicle light immediately before Ms. Dufour's car struck the rear of the stopped car. Mr. Griffin testified that he swerved into the emergency lane on the right-hand side of the interstate and barely missed hitting Ms. Andrews' Granada as it moved across the highway. Mr. Griffin then stopped his car at the top of the overpass. He returned to the accident scene on foot, left his name and telephone number with a bystander, and departed.
Ms. Griffin testified that at the time of the accident, she was Mr. Griffin's fiancee and was a passenger in Mr. Griffin's vehicle. She testified that Ms. Dufour's vehicle was traveling a short distance in front of them in the far left-hand lane at approximately 70 to 75 miles per hour, the same speed that Mr. Griffin's vehicle was traveling. Ms. Griffin said that she was alarmed to see a car stopped in front of Ms. Dufour's vehicle with no lights on. She said that the driver of the moving car (Ms. Dufour's car) did not see the stopped vehicle. Ms. Griffin saw the brake lights of Ms. Dufour's vehicle come on just before it ran into the rear of the stopped car. The Griffins testified that the streetlight directly above the stopped car was not working. (The police report did not reflect that the streetlight was not lit.)
Ms. Andrews maintains that she was not stopped at the time of the accident. Ford argues that the record shows that she could not remember whether her car was stopped or was moving at the time of the accident, for Ms. Andrews could not remember what happened after passing an earlier interstate exit at Bullard Road. Ms. Andrews was asked if she recalled feeling an impact, to which she replied, "No." Ms. Andrews testified that her headlights were on when she got on the interstate, but she could not remember what happened at the time of the collision.
Mr. Acker (Ms. Andrews' boyfriend at the time and now her ex-husband) testified that Ms. Andrews' vehicle was not stopped. Mr. Acker testified that he was sitting in the passenger seat with his head back, facing the ceiling with his eyes closed. He testified that he was not asleep and could tell that the vehicle was still moving when it was hit from behind. Contrary to every other witness' testimony that Ms. Andrews' car was in the far left-hand lane, he described the Andrews' vehicle as being in the right-hand lane. (Ms. Andrews testified in her deposition that she thought that Mr. Acker was sleeping.) After the accident, Mr. Acker told the investigating police officer that he did not know what happened. Ford points out that in his deposition, Mr. Acker admitted that he was drunk. Ms. Andrews said that he appeared to be drunk, and the police officer described Mr. Acker as being intoxicated.
Ms. Dufour's Oldsmobile slammed into the rear of the Granada, under riding the bumper for nearly three and one-half feet. The impact caused heavy damage to the Granada. The tip of the Oldsmobile's frame rail rammed about two feet beneath *20 the rear bumper, into the Granada's gas tank, where it lifted it upwards and tore a hole in the tank. The collision moved the Granada 25 to 35 feet from its position into the far right-hand lane.
Gasoline, which leaked from the Granada's fuel tank, ignited. Mr. Acker pulled Ms. Andrews out of the vehicle on the driver's side. Ms. Andrews sustained burns over 35 percent of her body. She was taken to Methodist Hospital where she was treated in the emergency room. She was transferred to Tulane Medical Center the next morning. She remained hospitalized at Tulane for 29 days and did not work for the next six months. She then returned to work at the Sewerage and Water Board.

Procedural History
Ms. Andrews filed suit against Ford, Ms. Dufour and Ms. Dufour's insurer, GEICO General Insurance Company ("GEICO"), as defendants, alleging negligence by Ms. Dufour, and improper design giving rise to strict liability against Ford. Ford answered the petition, alleging that the accident and Ms. Andrews' resulting injuries were caused by Ms. Dufour's comparative negligence and comparative negligence, assumption of the risk, and failure to mitigate damages on the part of Ms. Andrews.
GEICO filed its answer and third-party demand, naming Mr. Acker and his insurer's successor, Louisiana Insurance Guaranty Association ("LIGA") as third party defendants. GEICO alleged that the accident was caused solely or in part by Mr. Acker's negligent operation of a vehicle while under the influence of illegal substances and riding in a vehicle with a person who was under the influence of illegal substances. GEICO also claimed subrogation rights for payments made to Ms. Dufour under her GEICO insurance policy.
United Healthcare later intervened to recover health benefits of $175,249.86 that it paid to Ms. Andrews.
Following trial on the merits, the jury awarded Ms. Andrews $12,000,000.00. The jury apportioned the following percentages of fault:

 Ms. Andrews 0%
 Ms. Dufour 20%
 Ford 80%

The trial court judgment rendered in accord with the jury's verdict also awarded United Healthcare $175,249.86 for the health benefits it paid to Ms. Andrews.
Ms. Dufour and GEICO filed a motion to amend the judgment and/or for new trial and Ford moved for a JNOV and a new trial. Following hearings on the motions, the trial judge rendered a JNOV and apportioned fault as follows:

 Ms. Andrews 50%
 Ms. Dufour 25%
 Ford 25%

The trial court reduced the jury's damage award from $12,000,000.00 to $4,000,000.00, together with judicial interest and court costs. The judgment limited GEICO's liability to the face amount of the insurance policy it issued to Ms. Dufour and confirmed the earlier award of $175,249.86 to United Healthcare on its intervention.
Ford and Ms. Andrews appealed and United Healthcare answered Ford's appeal.

Issues
On appeal, Ms. Andrews contends that the trial court erred in: (1) misinterpreting this court's previous rulings and granting Ford's motion for JNOV; (2) assigning comparative fault to her; (3) reducing the jury's allocation of fault to Ford; (4) excluding portions of Dr. Leslie Ball's exhibits and deposition testimony; and (5) reducing the jury's damage award.
*21 On appeal, Ford argues that the trial court erred in: (1) finding that the fuel system of the 1976 Ford Granada was defective in its design; (2) permitting the plaintiff's experts, Dr. Ball and Mr. Arndt, to give opinion testimony on the allegedly defective design; and (3) failing to find that the jury deliberations were tainted.

JNOV  Standard of Review
A motion for a JNOV may be granted on the issue of liability or on the issue of damages or on both issues. La.C.C.P. art. 1811(F). As the Louisiana Supreme Court stated in Davis v. Wal-Mart Stores, Inc., XXXX-XXXX, pp. 4-5 (La.11/28/00), 774 So.2d 84, 89:
A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. Smith v. Davill Petroleum Company, Inc. d/b/a/ Piggly Wiggly, 97-1596 (La.App. 1 Cir. 12/9/98), 744 So.2d 23. See also Powell v. RTA, 96-0715 (La.6/18/97), 695 So.2d 1326; Anderson v. New Orleans Public Service, [Inc.], 583 So.2d 829 (La.1991); State of Louisiana, DOTD v. Scramuzza, 95-786 (La.App. 5 Cir. 4/3/96), 673 So.2d 1249; Seagers v. Pailet, 95-52 (La.App. 5 Cir. 5/10/95), 656 So.2d 700; Engolia v. Allain, 625 So.2d 723, 728 (La.App. 1 Cir.1993); Adams v. Security Ins. Co. [o]f Hartford, 543 So.2d 480, 486 (La.1989).
The standard of review for a JNOV on appeal is a two[-]part inquiry. In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether or not to grant the motion. After determining that the trial court correctly applied its standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard of review. Anderson v. New Orleans Public Service, Inc., at p. 832.
See also, Joseph v. Broussard Rice Mill, Inc., XXXX-XXXX, p. 5 (La.10/30/00), 772 So.2d 94.[1]
Appellate review of questions of law is simply a review of whether the trial court was legally correct or incorrect. O'Niell v. Louisiana Power & Light Co., 558 So.2d 1235, 1238 (La.App. 1 Cir.1990). Where the facts are not in dispute, the reviewing court must consider whether the trial court came to the proper legal determination under the undisputed facts. La.C.C.P. art. 2164; Maryland Cas. Co. v. Dixie Ins. Co., 622 So.2d 698 (La.App. 1 Cir.1993); Mallery v. International Harvester *22 Co., 96-321 (La.App. 3 Cir. 11/6/96), 690 So.2d 765.

Ms. Andrews' fault
In the present case, Ms. Andrews contends the trial court erred in granting Ford's motion for JNOV and finding her fifty percent (50%) at fault. Ford, on the other hand, contends the trial court was correct in granting the JNOV as no reasonable jury could have found that Ms. Andrews was not at fault in the accident. Ford notes that Mr. Acker was the only witness who testified that Ms. Andrews was moving when the collision occurred. The plaintiff's witnesses, Mr. Burkhart, an accident reconstruction expert, and Dr. Oscar Griffith, a physics expert, assumed for purposes of their calculations that Ms. Andrews' car was stopped. Mr. Burkhart and Dr. Griffith did not provide calculations based on other assumptions. Ford submits that Dr. Griffith calculated from the physical damage to the vehicles that Ms. Dufour's Oldsmobile was going 45 miles per hour faster than Ms. Andrews' vehicle was moving at the moment of impact. Dr. Griffith concluded that Ms. Dufour's Oldsmobile had to be going another ten miles per hour faster than that, i.e., 55 miles per hour faster than Ms. Andrews' vehicle, just before Ms. Dufour slammed on her brakes. In her brief, Ms. Andrews asserted that Ms. Dufour was traveling 55 miles per hour at the time of the accident. Ms. Dufour testified and the police report stated that Ms. Dufour was traveling about 55 miles an hour. Ford points out that Ms. Andrews' car could not have been moving more than a few miles per hour or was not moving at all in order for it to be hit from the rear at 45 miles per hour, which was the speed calculated by the experts to create the physical damage that occurred in the accident.
Based on the Griffins' estimate that Ms. Dufour was driving 75 miles per hour, Ms. Dufour would have slowed down ten miles per hour, to 65 miles per hour, by the moment of impact according to the plaintiff's expert. At impact, Ms. Dufour's Oldsmobile was going at least 45 miles per hour faster than Ms. Andrews' car was moving according to her own experts. Under this scenario, Ms. Andrews' car would have been going 20 miles per hour.
The overwhelming evidence in this case (both physical and testimonial) is that Ms. Dufour's vehicle was going over 70 miles per hour when she realized that she was faced with a very slow moving or stopped vehicle in the left-hand lane of the interstate highway. She was able to decelerate to approximately 65 miles per hour before her car contacted the rear of Ms. Andrews' car. The clear evidence is that the difference in speeds of the vehicles at the moment of impact was between 45 and 65 miles per hour. In such circumstances, substantial damage was going to occur and it was certainly foreseeable that the gas tank would rupture.
La. R.S. 32:64 states in pertinent part:
§ 64. General speed law
A. No person shall drive a vehicle on the highway within this state at a speed greater than is reasonable and prudent under the conditions and potential hazards then existing, having due regard for the traffic on, and the surface and width of, the highway, and the condition of the weather, and in no event at a speed in excess of the maximum speeds established by this Chapter or regulation of the department made pursuant thereto.
B. Except when a special hazard exists that requires lower speed for compliance with paragraph A of this section, no person shall operate or drive a motor vehicle upon the highways *23 of this state at such a slow speed as to impede the normal and reasonable movement of traffic. (Emphasis added.)
La. R.S. 32:71(B)(2) provides in pertinent part:
§ 71. Driving on right side of road; exceptions (2) In addition to the requirement of Paragraph 1 hereof, any vehicle proceeding on a multilane highway at a speed slower than ten miles per hour less than the posted maximum speed limit shall be driven in the right hand lane then available for traffic, or as close as practicable to the right hand curb or edge of the roadway, except when overtaking and passing a vehicle proceeding in the same direction or when preparing for a left turn at an intersection or into a private road or driveway. Persons in violation of this Paragraph shall be punished by a fine of not more than one hundred dollars, or by imprisonment for not more than thirty days, or both.
Considering that Ms. Andrews was in the far left lane and was moving slower than ten miles below the posted maximum speed limit, she was not complying with the above statutes. Further, two independent witnesses, John Griffin and Emily Griffin, testified that the Granada had no lights on.
In light of the record before us, we find reasonable minds could not arrive at a conclusion that Ms. Andrews was not at fault in the accident. Thus, we find the trial court was correct in granting the JNOV finding Ms. Andrews 50% at fault.

Ford's Fault
Ms. Andrews contends that the trial court erred in granting the JNOV and reducing Ford's fault from 80%, as assessed by the jury, to 25%. Ford, on the other hand, contends that the trial court, in granting the JNOV, erred in holding Ford strictly liable for a defect in the design of the Ford Granada gasoline tank.
Under the Louisiana Products Liability Act, La. R.S. 9:2800.56 states:
§ 2800.56. Unreasonably dangerous in design A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:
(1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and
(2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.
Additionally, La. R.S. 9:2800.59 provides:
§ 2800.59. Manufacturer knowledge, design feasibility and burden of proof
A. Notwithstanding R.S. 9:2800.56, a manufacturer of a product shall not be liable for damage proximately caused by a characteristic of the product's design if the manufacturer proves that, at the time the product left his control:
(1) He did not know and, in light of then-existing reasonably available scientific and technological knowledge, could not have known of the design characteristic that caused the damage *24 or the danger of such characteristic; or
(2) He did not know and, in light of then-existing reasonably available scientific and technological knowledge, could not have known of the alternative design identified by the claimant under R.S. 9:2800.56(1); or
(3) The alternative design identified by the claimant under R.S. 9:2800.56(1) was not feasible, in light of then-existing reasonably available scientific and technological knowledge or then-existing economic practicality.
B. Notwithstanding R.S. 9:2800.57(A) or (B), a manufacturer of a product shall not be liable for damage proximately caused by a characteristic of the product if the manufacturer proves that, at the time the product left his control, he did not know and, in light of then-existing reasonably available scientific and technological knowledge, could not have known of the characteristic that caused the damage or the danger of such characteristic.
Ms. Andrews asserts that her expert, Mr. Arndt, a mechanical engineer, testified that his proposed available alternative designs would have prevented Ms. Andrews' injuries. He made the following suggestions:
(1) The fuel tank should be placed in and over the axle location. Mr. Arndt pointed out that axle tanks in some foreign cars were sold in the United States in 1976;
(2) Ford could have put a shield on the bottom of its gas tank. Mr. Arndt explained that the shield would have prevented the subject explosion by taking the brunt of the impact;
(3) A thicker tank was preferable; and
(4) The filler neck should have been moved from its location behind the tank so that the fire would not have occurred.
She also claims that Dr. Ball, a systems engineer, testified that feasible alternative designs existed at the time that the 1976 Granada was manufactured, which would have prevented Ms. Andrews' burns. Ms. Andrews asserts that Dr. Ball referred to the Ford "Caprice"[2] with an over the axle tank, and the Ford Bronco and a BMW, which had polyethylene gas tanks. He said that the amount of money saved and the amount of weight saved was less than ten dollars and five pounds, respectively. He found that it did not justify the known risk that a rear end collision would cause the gas tank of the 1976 Granada, located near the rear bumper, to explode. Dr. Ball testified that the system design defects were unreasonably dangerous.
Ms. Andrews also contends that the trial court erred in not admitting into evidence exhibits attached to Dr. Ball's deposition because the exhibits were Ford's business records, kept in the regular course of Ford's business. Ford points out that the exhibits were Dr. Ball's notes based on his review of Ford's business records. Our review of the record on appeal satisfies us that Ms. Andrews did not provide Ford's actual business records. Therefore, trial court did not abuse its vast discretion in finding that Dr. Ball could testify about the Ford documents, but the exhibits of his notes from the documents were inadmissible.
Ms. Andrews argues that an expert witness can base his or her opinion on experience and training as an engineer, rather than on any particular scientific methodology, citing Talkington v. Atria *25 Reclamelucifers Fabrieken BV, 152 F.3d 254 (4th Cir.1998), cert. dismissed sub nom. Atria Reclamelucifers Fabrieken BV v. Talkington, 525 U.S. 1062, 119 S.Ct. 634, 142 L.Ed.2d 653 (1998). In Talkington, an electrical engineer was permitted to testify that fire in a sofa was caused by the exposure to an open flame. However, the expert's conclusion in Talkington was more obvious than the degree of reliability necessary to support an expert's opinion in the present case. An expert is not exempt from proving that an objective reliable basis existed to support his or her conclusions.
Ford maintains that Ms. Andrews submitted no proof of the two required elements under La. R.S. 9:2800.56(1). The first element required proof that a suggested feasible alternative design would have prevented the plaintiff's injuries. Mr. Arndt did not show that the proposed plastic shield would have prevented the puncture of the gas tank. He could not say what the shield would look like. He did not know how thick the metal of the gas tank would have had to be to prevent a puncture in the gas tank from the force of the accident. Ford asserts that there was no showing that the alternative designs would have made any difference.
Ms. Andrews' expert witnesses referred to other vehicles with a version of their suggested designs. However, in Jaeger v. Automotive Cas. Ins. Co., 95-2448 (La.App. 4 Cir. 10/9/96), 682 So.2d 292, 298, this court held that the failure to offer specific evidence of an alternative design was "insufficient to establish that a feasible alternative design existed at the time the product left the manufacturer's control that would have prevented the plaintiff's injury." This court noted that the inference of the existence of a vice or defect in a product is not found merely on the basis of the fact that the accident occurs. Id. In the present case, Ms. Andrews did not show that an alternative design of the fuel system could have prevented the plaintiff's injury. See also, Seither v. Winnebago Industries, Inc., 2002-2091 (La.App. 4 Cir. 7/2/03), 853 So.2d 37, writ den. 2003-2797 (La.2/13/04), 867 So.2d 704, and 2003-2799 (La.2/13/04), 867 So.2d 705.
Ford points out that the Granada gas tank was not crushed, but that a hole was punctured in the tank, gas leaked out, and the gas ignited. Mr. Arndt, Ms. Andrews' expert, confirmed that the gas tank did not explode. He answered the following question:
Q. And the tank did not explode in this accident, did it?
A. That's correct, it did not.
When Mr. Arndt was questioned about the shield he suggested could be placed on the bottom of the gas tank, he answered as follows:
Q.... Now, you haven't calculated the forces or the energy to determine whether a plastic shield on the bottom of the tank would have prevented the puncture in this accident, have you?
A. Well, I haven't done any calculations to try to figure that out. I'm not sure that is something you would do calculations to figure out, but I have done analyses to satisfy myself that would, in fact, be an appropriate design improvement.
Q. What I am specifically asking is, you have not obtained one of these components and done testing with a plastic shield to determine what the puncture resistance is, have you?
A. No, I have not done that. That is true.
Mr. Arndt did not provide proof that the plastic shield would have prevented the *26 accident.[3]See, Seither v. Winnebago Industries, Inc., supra.
Ford claims that Ms. Andrews presented no evidence or percentages to show how susceptible the Ford Granada was to the risk of fire. Ford asserts that there were 45,000 Granadas and 170,000 Mercury Monarks, an equivalent vehicle, with the same fuel system design. There was nothing showing other fires caused by rear-end collision accidents with vehicles containing the same fuel tank system. Ford maintains that the risk of such an occurrence is minuscule.[4] Ford claims that the bulk of the foreign cars that at one time had their gas tanks above the rear axle were redesigned to move the tank from that location.[5]
The manifest error rule relates exclusively to questions of fact. The sufficiency of the evidence is a question of law. Roberson v. August, XXXX-XXXX (La.App. 4 Cir. 5/29/02), 820 So.2d 620. The standard for determining the sufficiency of evidence relates to questions of law, or a mixed question of law and fact. Vignette Publications, Inc. v. Harborview Enterprises, Inc., XXXX-XXXX, pp. 2-3 (La.App. 4 Cir. 9/12/01), 799 So.2d 531, 533, citing Ambrose v. New Orleans Police Dept. Ambulance Service, 93-3099 (La.7/5/94), 639 So.2d 216, 223-24 (Lemmon J. concurring) and Rosell v. ESCO, 549 So.2d 840 (La.1989).
Upon review of the record in the present case, based not on a credibility determination (a factual issue), but on a sufficiency of evidence determination (a question of law), Ms. Andrews failed to bear her burden of proof. As a matter of law, she failed to prove that an existing feasible alternative design could have prevented her injuries. See, Seither v. Winnebago Industries Inc., supra. Thus, as a matter of law, the trial court erred in finding Ford at fault in this accident.[6]
The finding that Ms. Andrews failed to prove the first element under La. R.S. 9:2800.56 pretermits a review of the sufficiency of proof of the second element. A finding that Ford is not at fault pretermits a review of Ford's other assignments of error.

*27 Ms. Dufour's Fault

It was incumbent upon Ms. Andrews to establish by a preponderance of the evidence that Ms. Dufour was negligent and that this negligence caused her damages. See Cay v. State, Dept. of Transp. & Dev., 93-0887 (La.1/14/94), 631 So.2d 393. Ms. Andrews testified that she could not remember what happened at the time of the collision. Mr. Acker, however, testified that Ms. Andrews' vehicle was moving when it was struck from behind. Contradicting Mr. Acker's testimony, Ms. Dufour testified that Ms. Andrews' vehicle was stopped in the left-hand lane of the interstate when she struck it in the rear. Also, Ms. Dufour testified and the police report indicated that she was traveling at 55 miles per hour, the posted speed limit, at the time. The Griffins testified otherwise, stating she was traveling between 70 and 75 miles per hour. In any event, it is undisputed that Ms. Dufour struck Ms. Andrews' vehicle in the rear, under riding the bumper for nearly three and one-half feet and moving the vehicle 30 to 36 feet into the far right-hand lane of the interstate. The reasonable inference that the jury could have drawn from this evidence was that Ms. Dufour was traveling too fast and could have avoided the accident had she kept a proper lookout. Certainly, the evidence was sufficient for the jury to have reasonably found Ms. Dufour to be 20% at fault. As made clear in Joseph, the trial court should not evaluate the credibility of witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. Joseph, XXXX-XXXX, p. 12, 772 So.2d at 103. Thus, we conclude the trial judge improperly granted the JNOV as to Ms. Dufour and reinstate the jury's verdict of 20% of fault to her.

Allocation of Fault
Having found the trial court properly granted the JNOV finding Ms. Andrews comparatively negligent and assessing her with 50% of the fault, having reinstated the jury's verdict of 20% of fault to Ms. Dufour, and in view of our finding that Ford was not at fault for the accident, we must reallocate the remaining 30% of the fault to either or both remaining parties. The Louisiana Supreme Court, in Joseph v. Broussard Rice Mill, Inc., supra, reallocated fault using the factors it previously set forth in Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967 (La.1985). These factors include: whether the conduct resulted from inadvertence or involved awareness of the danger, how great a risk was created by the conduct, the significance of what was sought by the conduct, the capacities of the actors, whether superior or inferior, and any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson, 469 So.2d at 974. Considering the Watson factors, as well as the provisions of La. R.S. 32:64 and La. R.S. 32:71, we find that the remaining 30% of fault should be allocated to Ms. Dufour. Thus, the total fault in the case is to be divided equally, 50% percent to Ms. Andrews and 50% to Ms. Dufour.

Damages
Ms. Andrews contends that the trial court erred in granting a JNOV and reducing the damage award from $12,000,000.00 to $4,000,000.00. Ford, on the other hand, maintains that there was no evidence that Ms. Andrews lost any future earning potential as a result of the accident, and her lost wages were less than $8,000.00. It asserts that there was insufficient evidence that she would incur future medical expenses or that the pain and suffering would account for the $12,000,000.00 damage award.
*28 A general damage award assigned by a jury, although high or low, that does not shock the conscience should not be touched by an appellate court in light of the vast discretion that a finder of fact is granted in matters of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993). The same applies to a general damage award of a trial judge. The quantum of general damages is entirely subjective. The quantum of special damages, however, has an aspect of objectiveness to them because they are in part based upon actual known dollars.
As was done in both Anderson v. New Orleans Public Service, Inc., supra, and Joseph v. Broussard Rice Mill, Inc., supra, an appellate court may separately determine whether a trial court was correct in granting a JNOV on the issue of damages and on the issue of liability. Applying the JNOV standard as discussed infra, we find that the trial court improperly granted the JNOV on the issue of damages, as reasonable minds could differ on the valuation of Ms. Andrews' damages. Therefore, as was done in Anderson and Joseph, we are required to decide whether the jury's award of $12,000,000.00 in damages was manifestly erroneous or clearly wrong.
Ms. Andrews asserts that she was nearly burned to death because she was trapped inside the burning vehicle. She had continued embarrassment from her injuries, and she had to change her wardrobe and hobbies. She had a lengthy hospitalization, and had permanent multiple scars. Dr. Samuel Parry, Ms. Andrews' expert in plastic and reconstructive surgery, testified that the type of injuries suffered by Ms. Andrews were almost always lethal. She was severely burned. Upon arriving at the hospital she had trouble breathing and was placed on a ventilator. She remained on the ventilator for two weeks. She suffered third degree burns over 35% of her body, including her chest, back, arms, left foot, neck and jaw. The third degree burns killed nerve cells; evidence was presented that persons suffering third degree burns are more susceptible to squamous cancer. Ms. Andrews endured multiple skin grafts, including to the neck and face, which left visible scars. Her wounds required debridement. Keloidal scarring is present. She wore splints, a hand cast and a Jobst's cast. She had to undergo occupational and physical therapy. She developed folliculitis on the back of her neck in the area of a skin graft following discharge from the hospital; folliculitis is a serious infection of the sweat glands. Dr. Parry said that over time, the scars would contract. He explained that the scar on her arm could pull her elbow to where it could result in a useless hand. Webbing of the skin is present. Moreover, Ms. Andrews has psychological problems as a result of the injuries.
Ms. Andrews tragically suffered painful injuries as a result of the accident. In view of the evidence and the extent of her physical and psychological injuries, we cannot say that the award of $12,000,000.00 shocks the conscience or is beyond the vast discretion vested in the trier of fact when setting an award for general damages. See, Youn v. Maritime Overseas Corp., supra.

United Healthcare's Answer to the Appeal
United Healthcare answered the appeal, assigning as error the issues raised by Ms. Andrews regarding the trial court's grant of the JNOV as to Ford's liability and the reduction of the damage award. None of the parties raised any issue regarding the trial court's award of $175,249.86 to United Healthcare for the amounts it paid for medical expenses incurred by Ms. Andrews as a result of the *29 accident. The record reflects that the award was based on the amount the parties stipulated to prior to trial. Thus, the award will not be disturbed.

Motion to Dismiss
Ms. Dufour has filed a motion to dismiss her from this case based upon a decree of the United States Bankruptcy Court discharging her as a debtor. Since the decree is self-operating, we find no need to formally render a judgment dismissing her from this litigation.

Conclusion
For the foregoing reasons, we affirm the part of the JNOV that found Ms. Andrews 50% at fault. We reverse the portion of the JNOV that increased Ms. Dufour's fault and reinstate the jury's verdict as to her. We reverse the portion of the JNOV that held Ford at fault and, as a result, amend the JNOV to reassign the remaining fault to Ms. Dufour, thereby allocating total fault for the accident at 50% to Ms. Dufour and 50% to Ms. Andrews. We also reverse, in part, the JNOV on the issue of damages and reinstate the jury's damage award of $12,000,000.00. We affirm the award of $175,249.86 to United Healthcare on its intervention.
REVERSED IN PART; AFFIRMED, AS AMENDED, IN PART.
TOBIAS, J., Concurs in the Result and Assigns Reasons.
TOBIAS, J., concurs in the result and assigns reasons.
I respectfully concur in the result reached by the majority.
The majority correctly states the law respecting the standard of review of a judgment notwithstanding the verdict ("JNOV") as set forth in Davis v. Wal-Mart Stores, Inc., XXXX-XXXX, pp. 4-5 (La.11/28/00), 774 So.2d 84, 89, and Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La.1991), but then errs in its attempt to give deference to both the jury's verdict and trial court's JNOV on the issue of fault.[1] Where the majority and I part views is whether this court must give any validity or deference to the jury's verdict once we determine that the trial court was correct in granting the JNOV. In the case at bar, reasonable jurors could not find (a) that Ms. Andrews was not partially at fault or (b) that Ford was at fault (as discussed below); therefore the trial court was correct in granting the JNOV. The trial court was clearly wrong/manifestly erroneous in finding Ford at fault (as discussed below). Therefore, this court is required to recast the percentages of fault anew without giving any deference to either the jury's or trial judge's allocation of fault.[2]
Since this case was argued and while it was under advisement, a different panel of *30 this court decided Seither v. Winnebago Industries, Inc., 2002-2091 (La.App. 4 Cir. 7/2/03), 853 So.2d 37, writ den. 2003-2797 (La.2/13/04), 867 So.2d 704 and 2003-2799 (La.2/13/04), 867 So.2d 705. Seither is now the rule of law in this circuit and we are required to adhere to it. Seither requires that we find that Ford was not responsible for the accident or injuries based upon the evidence in the record before us as explained in the majority's opinion.

ORDER
It is hereby ordered that rehearing is granted for the limited purpose of amending page 4 of our opinion and to further amend the trial court judgment to reflect the correct name of GEICO General Insurance company. In all other respects, rehearing is denied.
/s/ Tobias, J. Concurs in Part and Dissents in Part
MAX N. TOBIAS, JR., Judge
/s/ Leon A. Cannizzaro, Jr.
LEON A. CANNIZZARO, JR., Judge
/s/ Roland L. Belsome
ROLAND L. BELSOME, Judge
TOBIAS, J., concurs in part and dissents in part.
I respectfully concur in the granting of the rehearing to correct the name of GEICO to read "GEICO General Insurance Company." I respectfully dissent from the failure to grant an en banc rehearing.
NOTES
[1] We note that in Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La.1991), the Supreme Court analyzed the trial court's grant of the JNOV separately on the issues of liability and damages, concluding that the trial court erred in granting the JNOV on the issue of liability but not on the issue of damages.
[2] Ford explained that the vehicle was a Ford Capri manufactured in Europe.
[3] The strongest evidence in the record respecting the ability of a shield to protect the tank is that one might have prevented the tank from rupturing; no evidence is present that a reasonable shield would have prevented the tank from rupturing.
[4] Obviously, the size, weight, speed, and angle of a vehicle striking the rear of a Granada can and will vary from accident to accident. We doubt that it is reasonable to require a manufacturer to design an appropriate crash-resistant, totally safe vehicle that anticipates a rear-end collision with every vehicle ever made in the past or that might be made in the future. The difference in age between the Andrews and Dufour vehicles was 9 years, Ms. Andrew's having the older. We ponder what would have happened if Ms. Dufour had been driving a smaller or larger vehicle or a vehicle whose design would not have caused a piece of metal to puncture the gas tank.
[5] That virtually every car manufactured in the United States and the world at the time (1976) had a gas tank located in essentially the same location as the 1976 Granada and that the thickness of the metal of automobile gas tanks of the time ranged between 0.026 and 0.032 inches (with the Granada's falling within that range) clearly preponderates to the reasonableness of design.
[6] This accident involved a vehicle constructed in either 1975 or 1976 (the vehicle model was a 1976 Ford Granada) and the accident occurred approximately 15 years later. Reasonableness in design in this case entails what was reasonably known at the time of construction (and for years thereafter if a duty existed to warn of a defect; no claim for failure to warn is made in this case). The evidence is lacking in this case to show that the 1976 Granada was unreasonably dangerous for a severe rear-end impact such as occurred in this case.
[1] As Anderson demonstrates, one may analyze the issues of liability and damages separately for purposes of review of whether the trial court was wrong as a matter of law in granting the JNOV.
[2] The majority places reliance on Joseph v. Broussard Rice Mill, Inc., XXXX-XXXX (La.10/30/00), 772 So.2d 94. That which Joseph added to our jurisprudence is: "Because of the exacting requirements for granting a JNOV, it is theoretically possible for a JNOV to have been improvidently granted, and yet the jury verdict may be manifestly erroneous." Id. at p. 16, 722 So.2d at 105. The Joseph court's analysis of the facts, however, failed to adhere to its own ruling therein and reinstated in part the jury's verdict on the issue of liability. I, therefore, find that the Davis holding is the one to be applied to this case. We are required to reallocate fault between Ms. Andrews and Ms. Dufour because the trial court's JNOV was manifestly erroneous/ clearly wrong in assigning any fault to Ford.