982 So.2d 928 (2008)
William J. STEWART and Tanya L. Hughes
v.
Nelson J. ICE, A-1 Glass Services, Inc. and Allstate Insurance Company.
No. 2007-CA-0871.
Court of Appeal of Louisiana, Fourth Circuit.
April 9, 2008.
*930 Anthony J. Russo, Dean J. Favret, Angela C. Imbornone, Favret, Demarest, Russo & Lutkewitte, New Orleans, LA, for Plaintiffs/Appellees.
Christopher E. Lawler, Christopher P. Lawler, Donovan & Lawler, APLC, Metairie, LA, for Defendant/Appellant, Allstate Insurance Company.
(Court composed of Judge DAVID S. GORBATY, Judge LEON A. CANNIZZARO, JR., Judge ROLAND L. BELSOME).
ROLAND L. BELSOME, Judge.
This appeal is taken from the judgment rendered by the trial court subsequent to a trial on the merits. The trial court found Nelson J. Ice, A-1 glass Services, Inc. and Allstate Insurance Company 100% liable to William J. Stewart for injuries sustained in the vehicular collision that occurred on February 26, 2003. Mr. Stewart was awarded three hundred fifty thousand dollars ($350,000.00) in general damages, twenty-seven thousand five hundred dollars ($27,500.00) for the costs of his arthroscopic surgery, six thousand three hundred eleven dollars ($6,311.00) for past medicals, five hundred dollars ($500.00) for Dr. Lander Pearce's expert fee, and one thousand two hundred ($1,200.00) for Dr. Vaclav Hamsa's expert fees. The trial court further awarded Tanya L. Hughes (Mrs. Stewart) twenty-five thousand dollars ($25,000.00) for loss of consortium. This appeal followed.
On appeal the appellant, Allstate Insurance Company (Allstate), contends that the trial court: 1) committed manifest error in finding Nelson J. Ice 100% at fault for the accident; 2) committed manifest error in finding that William J. Stewart's injuries were causally related to the February 26, 2003 accident; 3) abused its discretion in awarding $350,000.00 in general damages and $25,000.00 for loss of consortium; and 4) committed legal error in excluding from evidence copies of Mr. Stewart's prior lawsuits and the diagram in the police report.
The appellate court's standard of review is manifest error. Stobart v. State of La., Through Dep't of Transp. and Dev., 617 So.2d 880, 882 (La.1993). Even though this Court, sitting as the trier of fact, *931 would have found differently, the trial court's determination must not be disturbed absent a finding that it was clearly wrong or manifestly erroneous. Id. If there are two permissible views of the evidence, the trial court's choice cannot be manifestly erroneous. Id.
The vehicular collision which is the subject of this litigation occurred on February 26, 2003. Mr. Stewart was operating a United taxicab in route to drop off his fare at Mercy Hospital. Mr. Stewart was traveling westbound on City Park Avenue from Canal Boulevard and made a right turn on Bienville Street traveling in the left lane. An A-1 Glass Services, Inc. (A-1) vehicle operated by Nelson Ice was traveling southbound on Bienville in the left lane ahead of Mr. Stewart. The record indicates that Mr. Ice was looking for a lunch place for his crew. As per Mr. Ice's testimony, he moved his vehicle into the right lane and attempted to make a wide u-turn at Helena Street. The collision happened as Mr. Stewart was approaching Helena Street in the left lane. Mr. Stewart testified that he observed the truck turning right prior to his vehicle being struck and knocked across the median. The investigating officer at the scene cited Mr. Ice for making an improper turn.
Allstate argues that the trial court erred by allocating 100% fault to Mr. Ice. The allocation of fault is a factual determination, thus the trier of fact is vested with great discretion. Clement v. Frey, 95-1119 (La.1/16/96), 666 So.2d 607, 610. This Court will not adjust an apportionment of fault unless it is clearly wrong. Id. at 611.
In the case before us it is undisputed that Mr. Ice moved his vehicle from the left lane, which Mr. Stewart had been traveling in, and then swung the vehicle back into the left lane for the purpose of making a wide left turn. As the citation issued to Mr. Ice indicated, this was an improper turn. Although Mr. Ice was improperly turning, Allstate attempts to transfer some percentage of fault to Mr. Stewart simply based on the fact that Mr. Ice signaled that he was turning. Under the facts of this case, we cannot find that the trial court erred in allocating 100% fault to Mr. Ice.
Next we will review the issues of causation and damages. The trial court found that although Mr. Stewart had been injured in previous accidents he sustained "new injuries" in the February 2003 collision. Mr. Stewart's new injuries were described as a Baker's cyst behind his right knee, complex tear of the posterior horn of the medial and lateral meniscus, partial tear of the medial collateral ligament, and chronic patella tendonitis.
Allstate maintains that the injuries complained of by Mr. Stewart predated the February 2003 collision. More specifically, Mr. Stewart was involved in a 1998 automobile accident in which his right knee was injured. Due to that accident, Mr. Stewart underwent arthroscopic surgery performed by Dr. Courtney Russo. A June 10, 1999 surgical report identified a tear in the anterior portion of the lateral meniscus which was removed. However the report also revealed that the posterior horn of the lateral meniscus was in good shape and the medial compartment was normal. Mr. Stewart treated with Dr. Russo until April 2001. He testified that he discontinued treatment because his knee was feeling good with only a little stiffness.
Mr. Stewart again injured his knee while a passenger in a vehicle that was rear ended on June 28, 2001. In that incident Mr. Stewart's right knee hit the dashboard. Mr. Stewart treated for approximately 8 months, but that treatment did *932 not call for an MRI or a surgery recommendation for his right knee. Mr. Stewart and his wife testified that for more than a year before the February 2003 accident Mr. Stewart's activities were not restricted, and only occasionally did he experience stiffness in his right knee.
The February 9, 2004 MRI on Mr. Stewart's right knee, which radiologist, Dr. Lander Pearce interpreted revealed: 1) joint effusion; 2) Baker's cyst; 3) chronic patellar tendonitis; 4) complex tear of the posterior horn of the medial meniscus; 5) partial tear of the medial collateral ligament; 6) vertical tear of the posterior horn of the lateral meniscus. After reviewing the 1999 MRI of Mr. Stewart's right knee taken by Dr. Russo, Dr. Pearce concluded that the conditions listed above were caused sometime after the June 10, 1999 knee surgery.
Furthermore, on April 7, 2004 Mr. Stewart sought treatment with Dr. R. Vaclav Hamsa, an orthopedic surgeon. Upon examining Mr. Stewart, Dr. Hamsa diagnosed him with a cervical sprain, discogenic lumbosacral sprain, severe sprain and contusion of the right knee with combination internal derangement, torn medial meniscus, torn lateral meniscus, partial tear of the medial collateral ligament, and chondromalacia of the patella. Dr. Hasma has continued to be Mr. Stewart's treating physician and his records indicate a continued decrease in Mr. Stewart's condition with low back pain, sciatic pain into the right leg, and pain, swelling and giving way of his right knee. Because of these continued symptoms, Dr. Hamsa assigned Mr. Stewart a whole body impairment rating of 1-3% for his lumbar spine and an18-25% impairment for his right knee. Taking into account Mr. Stewart's entire medical history, Dr. Hamsa related Mr. Stewart's present injuries to the February 26, 2003 accident.
Even though Allstate has argued that it was the 2001 accident rather than the 2003 accident that was the cause of Mr. Stewart's right knee problems the trial court did not find that the evidence presented at trial supported such a finding. We must agree. At trial, Allstate's witness, Dr. Terry Habig was presented with a hypothetical mirroring Mr. Stewart's accident and treatment history together with his present condition and Dr. Habig concurred that it would be more probable than not that the 2003 accident was the cause of the abnormal findings revealed in the February 9, 2004 MRI. Thus, we cannot find that the trial court was manifestly erroneous or clearly wrong when it determined that the accident made subject of this lawsuit was the cause of Mr. Stewart's injuries.
Additionally, Allstate argues that the trial court abused its discretion in awarding general damages of $350,000.00 to Mr. Stewart and loss of consortium damages of $25,000.00 to his wife. It is well established that an award of damages will not be disturbed by this Court absent a showing that the trial court abused its vast discretion. See, La. C.C. art. 2324.1 and Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993). Thus, if we find the trial court's award is not so high or so low in proportion to the injury as to "shock the conscience" it will be affirmed. See Andrews v. Dufour, 03-0736 (La.App. 4 Cir. 6/2/04), 882 So.2d 15.
In the case sub judice the trial court was presented evidence of Mr. Stewart's physical impairments since the February 2003 accident. As a result of Mr. Stewart's soft disc syndrome at L4-5 with disruption he experiences daily low back pain and symptoms which is aggravated by the condition of his right knee. He is restricted in his lifting to under 25 pounds and cannot carry objects greater than 5-8 pounds. He is further prevented from any *933 prolonged bending or stooping. His permanent whole body impairment is 1-3%.
Furthermore, Mr. Stewart's right knee injuries which include a Baker's cyst, patellar tendonitis, complex tear of the posterior horn of the medial meniscus, partial tear of the medial collateral ligament, and a vertical tear of the posterior horn of the lateral meniscus restrict his activities and prevent him from squatting, kneeling, crawling or climbing. He has experienced daily swelling and instability of the right knee since the time of the February 2003 accident and has to wear a knee brace on a daily basis. Without surgical intervention Mr. Stewart is left with a permanent impairment rating of 18-25%. The pain he experiences in his knee interferes with his ability to walk, sleep and interact with his wife and children. He describes his right knee and low back pain as a 10 on a scale of 0-10.
Mrs. Stewart's testimony supported Mr. Stewart's account of his pain and daily limitations noting a level of frustration. He is more reliant on others and less involved with his children's activities. Mr. Stewart was a professional driver and is now physically unable to perform that job. These injuries have permanently affected Mr. Stewart's life. Mrs. Stewart also testified to the effects of Mr. Stewart's injuries on their marriage. Mrs. Stewart stated their relationship is not as close and lacks intimacy since the February 2003 accident.
Clearly the trial court was well within its discretion when it awarded Mr. Stewart $350,000.00 in general damages and Mrs. Stewart $25,000.00 for loss of consortium. These awards will not be disturbed.
Lastly, Allstate claims that the trial court committed legal error in excluding from evidence copies of Mr. Stewart's prior lawsuits and the diagram in the police report. The trial court sitting as the trier of fact denied that the above referenced documents be admitted into evidence.
Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. Relevant evidence is generally admissible. La. C.E. art. 402. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." La. C.E. art. 403. A trial court's rulings on such evidentiary issues will not be disturbed absent a clear abuse of discretion. Jones v. Peyton Place, Inc., 95-0574, pp. 11-12 (La.App. 4 Cir. 5/22/96), 675 So.2d 754, 763.
Mr. Stewart admitted to the past lawsuits during his testimony. The trial court stated that the copies of the prior lawsuits were irrelevant. We agree. Further, the police diagram of the accident was used during Officer Ashish Shah's cross-examination. The diagram was part of the police report and Officer Shah thoroughly explained the diagram during his cross examination. The failure to allow the document into evidence is at worst harmless error. However, given the trial court's vast discretion we find no error. Under the facts and circumstances there was no abuse of discretion by the trial court in either of those evidentiary rulings.
The appellees raise one issue on appeal. Specifically, the appellees seek clarification concerning the award of legal interest; the trial court's judgment rendered in their favor was silent on that issue.
*934 Legal interest on judgments for damages in tort cases is an operation of law.[1] The interest attaches automatically until the judgment is paid in actions ex delicto regardless of whether it was prayed for in the petition or mentioned in the judgment. Trentecosta v. Beck, 95-0096 (La.App. 4 Cir. 5/13/98), 714 So.2d 721; Broome v. Gauthier, 443 So.2d 1127 (La.App. 4 Cir.1983). Although the language need not be in the judgment, for clarity we will amend the judgment to include interest from the date of judicial demand until paid.
Accordingly, for the reasons discussed we affirm the trial court's findings and judgment as amended.
AMENDED AND AFFIRMED.
NOTES
[1] LSA R.S. 13:4203. Interest on judgments from judicial demand in ex delicto cases:

Legal interest shall attach from date of judicial demand, on all judgments, sounding in damages, "ex delicto", which may be rendered by any of the courts.