| | | |
|---|---|---|
| **MAXIMO URBINA** | * | **NO. 2025-CA-0261** |
| **VERSUS** | * | |
| | * | **COURT OF APPEAL** |
| **SUNBELT RENTAL, INC., ET AL** | * | **FOURTH CIRCUIT** |
| | \* \* \* \* \* \* \* | **STATE OF LOUISIANA** |

**CONSOLIDATED WITH:**        <u>CONSOLIDATED WITH:</u>

**MAXIMINO URBINA**        **NO. 2025-C-0214**

**VERSUS**

**SUNBELT RENTALS, INC.,
SUNBELT RENTALS SCAFFOLD
SERVICES, LLC, SUNBELT
RENTALS INDUSTRIAL
SERVICES, LLC, THE TORO
COMPANY AND TRAVELERS
INSURANCE COMPANY**

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-10139, DIVISION "A"
Honorable Ellen M Hazeur, Judge
\* \* \* \* \* \*
**Judge Joy Cossich Lobrano**
\* \* \* \* \* \*

(Court composed of Chief Judge Roland L. Belsome, Judge Joy Cossich Lobrano,
Judge Rosemary Ledet, Judge Tiffany Gautier Chase, Judge Nakisha Ervin-Knott)

**LEDET, J., DISSENTING IN PART**
**CHASE, J., DISSENTS IN PART AND CONCURS IN PART**
**ERVIN-KNOTT, J., DISSENTING IN PART**

Marc Lloyd Frischhertz
Anthony J. Impastato
FRISCHHERTZ & IMPASTATO
1140 St. Charles Avenue
New Orleans, LA 70130

       COUNSEL FOR PLAINTIFF/APPELLANT

Timothy P. Hurley
George Imbraguglio, Jr.
MCGLINCHEY STAFFORD, PLLC
601 Poydras Street, Suite 1200
New Orleans, LA 70130

COUNSEL FOR DEFENDANT/APPELLEE

**REVERSED; WRIT DENIED; REMANDED.**
**JANUARY 21, 2026**

*JCL*
*RLB*

This consolidated matter arises from injuries sustained by plaintiff, Maximino Urbina ("Urbina"), while operating a Toro MB 1600 mud buggy leased by his employer Tuna Construction from Sunbelt Rentals, Inc, Sunbelt Rentals Scaffolding Services, LLC, and Sunbelt Rentals Industrial Services, LLC ("collectively Sunbelt"). Urbina appeals the district court's December 16, 2024 summary judgment rulings dismissing: (1) his Louisiana Products Liability Act ("LPLA") construction/composition claim against The Toro Company ("Toro"); (2) his LPLA failure to warn claim against Toro; and (3) his negligence claim against Sunbelt. Toro separately seeks supervisory review of the district court's denial of its motion for summary judgment on Urbina's LPLA design defect claim.

For the reasons that follow, this opinion would reverse the district court's summary judgment rulings dismissing Urbina's LPLA construction/composition and failure to warn claims against Toro. This opinion would also reverse the district court's summary judgment ruling dismissing Urbina's negligence claim against Sunbelt. Finally, this opinion would deny Toro's writ application seeking

1

supervisory review of the district court's denial of summary judgment on Urbina's LPLA design defect claim.

Following submission to a five-judge panel, this Court's plurality decision on the issues presented on appeal and supervisory review is as follows. On appeal, a majority of the panel reverses the district court's summary judgment ruling dismissing Urbina's LPLA construction/composition claim. A majority, however, affirms the dismissal of Urbina's LPLA failure to warn claim, for reasons expressed in the dissenting opinions. A majority also reverses the district court's dismissal of Urbina's negligence claim against Sunbelt. On supervisory review, the Court unanimously denies Toro's writ application challenging the district court's denial of Urbina's LPLA design defect claim.

### *FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

The incident giving rise to this litigation occurred on or about November 28-29, 2017, at the Spanish Plaza construction site in New Orleans. Urbina, an employee of Tuna Construction, was performing demolition and debris removal work. Tuna had leased a Toro MB 1600 mud buggy from Sunbelt earlier. The mud buggy, designed as a ride-on unit used to transport heavy materials, features a rear operator platform and a steel handlebar fitted with rubber grips. The operator controls the machine by standing on the platform and holding the grips; the system has no harnesses or alternative contact points for operator stability.

While operating the buggy in the ordinary course of his work, Urbina stood on the platform, held both grips, and traveled toward a dumpster to unload debris.

2

As he did so, the right rubber handle grip unexpectedly slipped off the painted steel handlebar. Urbina lost balance, fell backward, struck the ground, and sustained injuries.

The mud buggy had been manufactured by Toro in May 2017 and delivered to Sunbelt shortly thereafter. Between May and November 2017, Sunbelt rented the machine to approximately 12 customers and performed routine inspections and maintenance before re-renting the unit. Sunbelt delivered the buggy to Tuna on November 6, 2017, approximately three weeks before the accident.

Toro's corporate representative explained that the handle grips are generic, third-party components installed by lubricating the painted handlebar with an alcohol-based solution and sliding the grip into place. Toro uses no adhesive and relies solely on friction between rubber and painted steel. Toro acknowledged that the grips are meant to be stationary and are not designed to rotate or detach in normal operation. Toro also admitted there is no defined specification for minimum pull force or for operator weight. Toro agreed that from a performance standpoint the grips "are not supposed to come off" in use.

After the accident, both parties' experts inspected an exemplar Toro MB 1600 manufactured within the same timeframe as the subject unit. Both attempted to remove the grips from the exemplar by hand and were unable to do so, even with maximum manual force. Toro's expert John Johnson further conceded that photographs of the subject grip revealed no apparent damage and testified that, if undamaged, the grip should not have detached during ordinary use.

Following Urbina's filing of the instant suit, Toro and Sunbelt moved for summary judgment. Toro sought dismissal of all LPLA theories except design defect and moved for summary judgment on negligence. On May 31, 2024, the district court orally denied Toro's motion on design defect but granted summary judgment on all remaining claims. The district court later entered written judgments on December 16, 2024. Urbina timely appealed. Toro timely noticed its intent to seek supervisory writs from the denial of summary judgment on design defect, and the writ was ultimately filed following extensions granted by the district court and this Court.[1] The appeal and supervisory writ were consolidated for review.

### STANDARD OF REVIEW

Appellate courts review summary judgment rulings *de novo*, applying the same criteria governing the district court. *Peironnet v. Matador Res. Co.*, 2012-2292, p. 29 (La. 6/28/13), 144 So.3d 791, 814. Summary judgment is proper when the mover shows that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A factual dispute is genuine if reasonable factfinders could disagree. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751. A fact is material when it potentially affects the outcome of the case. *Peironnet,* 2012-2292, p. 29, 144 So.3d at 814. All reasonable factual inferences must be drawn in favor of the non-moving party. "In determining whether an issue is genuine, a court should not

---

[1] To the extent Toro urges this Court to review the district court's ruling on the reasonably anticipated use, we note that Toro did not seek supervisory review of the ruling and did not answer Urbina's appeal on that ground. Consistent with the limits of our supervisory and appellate jurisdiction, we therefore do not reach the reasonably anticipated use issue in this opinion.

consider the merits, make credibility determinations, evaluate testimony or weigh evidence." *Robertson,* 20-0605, p. 4, 315 So.3d at 935 (quoting *Est. of Alix v. Wells*, 07-0503 p. 3 (La. App. 4 Cir. 12/12/07), 974 So.2d 63, 65).

## PART I: URBINA'S APPEAL

We begin our review by addressing Urbina's assigned errors raised on appeal. Urbina claims the district court erred in granting summary judgment in favor of Toro and dismissing his construction/composition defect claim under La. R.S. 9:2800.55 and his failure to warn claim under La. R.S. 9:2800.57. Urbina also avers the district court erred in granting Sunbelt's motion for summary judgment and dismissed his negligence claim.

### Construction/Composition Defect (Toro)

Pursuant to La. R.S. 9:2800.55, a product is unreasonably dangerous in construction or composition if, at the time it left the manufacturer's control, it deviated materially from the manufacturer's specifications, performance standards, or otherwise identical products manufactured by the same manufacturer. A plaintiff may prove the defect through direct or circumstantial evidence, and the Louisiana Supreme Court has recognized that *res ispa loquitur*-type inferences may be appropriate where the circumstances make a manufacturer-caused defect the more probable explanation. *Lawson v. Mitsubishi Motor Sales of Am., Inc.*, 05-0257, p. 20 (La. 9/6/06) 938 So.2d 35, 49 (finding circumstantial evidence may be used "to make the inference that a product was unreasonably dangerous when that product left a manufacturer's control").

The record contains circumstantial evidence from which a reasonable juror could infer that the grip deviated from Toro's performance expectations when it left Toro's control. Toro's representative testified that the grips "are not supposed

5

to come off" during ordinary use. The grip here, undamaged according to Toro's own expert, nevertheless detached while Urbina was operating the machine in the expected manner while standing on the platform. Both experts attempted but failed to remove grips from nearly identical exemplar units. The accident occurred only months after manufacture and within weeks of Sunbelt's rental to Tuna. Toro identified no specific intervening cause, instead speculating generally that "something changed."

Toro claims that in the absence of a written numerical pull-force specification, Urbina cannot prove deviation. Still, La. R.S. 9:2800.55 allows proof by deviation from either specifications, performance standards, or otherwise identical products. Toro's own expert testimony that the grips are designed not to detach under normal forces applied by an operator constitutes a performance standard. The undisputed detachment is evidence of deviation from that standard, and is further underscored by evidence that both experts could not remove the grips from an identical exemplar unit.

Additionally, any claim that Toro lacked exclusive control lacks merit. Exclusive control is not a prerequisite in a products liability case. Rather, the question is whether the overall circumstances support the inference that the defect more likely existed than not existed when the product left the manufacturer. The presence of intermediate custodians goes to the weight of the evidence, not the availability of circumstantial proof.

On this record, reasonable factfinders could differ on whether the subject grip was unreasonably dangerous in construction or composition when it left Toro's control. The district court's summary dismissal of the construction/composition defect claim was therefore improper.

6

### *Failure to Warn (Toro)*

Before addressing the failure to warn issue, we note that the following discussion reflects the minority view of the writing judge. The majority's reasoning on this issue is set forth in the dissenting opinions that follow.

Under La. R.S. 9:2800.57, a product is unreasonably dangerous for lack of adequate warning when, at the time it left the manufacturer's control, it "possessed a characteristic that may cause damage, and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product."

Toro's own expert posited that moisture, contaminants, or ordinary wear could lessen friction between the grip and handlebar and lead to grip detachment. Toro provides no specific warning regarding this risk, notwithstanding the foreseeable conditions of outdoor construction work. The adequacy of warnings, the foreseeability of harm, and whether an additional warning would have been effective are factual issues inappropriate for resolution on summary judgment.

Finding factual issues remain regarding the content and adequacy of Toro's warnings and the causal link between any failure to warn and the accident, the district court erred in dismissing this claim.

### *Negligence (Sunbelt)*

Urbina alleges that Sunbelt breached its duty as a commercial lessor by failing to detect and correct any loosening or defect in the handle grip before renting the machine to Tuna. Sunbelt rented the unit repeatedly over several months, conducted its own inspections and maintenance, including on the day it delivered the unit to Tuna. Additionally, Sunbelt's representative testified that the machine passed pre-rental inspection.

If, as Toro's expert suggested, any loosening occurred during prior rentals, a reasonable factfinder could conclude that Sunbelt knew or should have known of the compromised grip and failed to act with ordinary care before renting the machine to Tuna. Sunbelt's reliance on lease language purporting to shift liability, including bodily injury, to the lessee raises unresolved questions under La. C.C. arts. 2696, 2699, and 2004. Under La. C.C. art. 2696, a lessor warrants that the leased thing is suitable for its leased purpose and "free of vices or defects that prevent its use for that purpose." Article 2699 allows waiver only under strict conditions and preserves the invalidity of clauses contrary to Article 2004, which nullifies advance exclusions or limitations of liability for physical injury. There is no evidence that any waiver was specifically brought to Tuna's attention, explained, or that the waiver could insulate Sunbelt from its own negligence causing physical injury. These statutory constraints, at minimum, create legal and factual questions that preclude summary judgment as they relate to advance waiver of liability for physical injury.

Further, factual disputes exist regarding the post-accident handling of the grip. In particular, it is unclear what happened to the machine and the subject grip after the accident, who retrieved it, who reinstalled the grip, whether the grip viewed at the later inspection was the same grip involved in the accident, and what, if any, documentation exists of post-accident handling. These uncertainties go directly to causation, notice, and the credibility of Sunbelt's inspection. Therefore, whether Sunbelt breached its independent obligations under La. C.C. arts. 2315, 2696, and 2699 is a factual question precluding summary judgment.

Accordingly, we find dismissal of Urbina's negligence claims against Sunbelt was improper.

*PART II: TORO'S SUPERVISORY WRIT*

We next turn our attention to Toro's writ application, seeking supervisory review of the district court's denial of its motion for summary judgment on Urbina's design defect claim.

### Design Defect Under La. R.S. 9:2800.56

To prevail at trial, a plaintiff must show: (1) that a feasible alternative design existed at the time the product left the manufacturer's control; and (2) that the risk of harm outweighed the burden of adopting the alternative design and any adverse effect on product utility. La. R.S. 9:2800.56.

On summary judgment, however, the question is not whether the plaintiff has proved the design defect, but whether the plaintiff has produced admissible evidence sufficient to allow a reasonable juror to find the required elements have been met.

Urbina's expert, Dr. Stephen Batzer, identified several feasible alternative grip-retention methods, including adhesive bonding, mechanical collars, and end-cap restraints. He opined that these alternative approaches are commonplace engineering measures already used in similar applications, were technologically feasible when the MB 1600 was manufactured, and would have reduced or prevented grip detachment without materially impairing the machine's functionality.

Toro, on the other hand, focuses largely on the absence of prototype testing, engineering drawings, or cost analysis to counter Dr. Batzer's expert opinion. In support of its position, Toro relies on *Seither v. Winnebago Indus., Inc.*, 02-2091 (La. App. 4 Cir. 7/2/03), 853 So.2d 37, to argue that Urbina's design defect claim rests on mere speculation. However, *Seither* addressed the adequacy of proof at

trial or directed verdict, not at summary judgment. At this stage, we review expert opinions only to decide whether those opinions, if believed, could satisfy the elements of a design defect under La. R.S. 9:2800.56. Disagreements between experts concern weight and credibility, not the sufficiency of the evidence to create a fact issue.

In the case *sub judice*, Urbina's expert identified alternative engineering measures that are widely used to secure grips and similar components on other equipment. He opined that these alternatives were technologically available and feasible at the time the MB 1600 left Toro's control and would improve safety by reducing or preventing grip detachment. These changes, Urbina's expert found, could be implemented without compromising the machine's utility and with minimal burden. Toro's criticism that Urbina's expert failed to produce prototype testing, drawings or cost analysis goes to the weight and credibility of this testimony, not its ability to support a reasonable inference in Urbina's favor.

Viewing the evidence in the light most favorable to Urbina, a reasonable jury could find that (1) a feasible alternative existed that would have prevented or significantly reduced the risk of Urbina's accident; and (2) the risk and gravity of a grip detachment outweighed the burden and any adverse utility effects of adopting a more secure fixation method. We find the district court did not err in denying Toro's motion for summary judgment on the design defect claim and decline to disturb the district court's ruling on supervisory review. Therefore, the writ is denied on the merits.

## *CONCLUSION*

The summary judgment record reveals genuine issues of material fact regarding whether the subject grip deviated from Toro's performance standards,

whether Toro failed to warn of a foreseeable hazard, and whether Sunbelt exercised reasonable care in inspecting and maintaining the equipment. Urbina also produced sufficient expert evidence to support a triable design defect claim.

## *DECREE*

For the foregoing reasons, in Case No. 2025-CA-0261, the district court's judgment granting summary judgment in favor of The Toro Company on Urbina's construction/composition defect and failure to warn claims is reversed.[2] Likewise, in the same numbered matter, Case No. 2025-CA-0261, we reverse the district court's judgment in favor of Sunbelt dismissing Urbina's negligence claims. The matter is remanded for further proceedings consistent with this opinion.

Furthermore, in that we find no error in the district court's denial of summary judgment on Urbina's design defect claim, Toro's writ application, in Case No. 2025-C-0214, is denied on the merits.

**REVERSED; WRIT DENIED; REMANDED.**

---

[2] As noted in the discussion above, the position expressed by the opinion's author on the failure to warn issue reflects a minority view. A majority of the panel affirms the district court's dismissal of Urbina's failure to warn claim.